■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIS KNIGHT, Appellant. (Appeal No. 1.) [721 NYS2d 166] —Judgment unanimously affirmed. Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1], [3]) and rape in the first degree (Penal Law § 130.35 [1]) in connection with the abduction, rape and murder of an 18-year-old college student in Rochester. The victim was abducted in her own vehicle from the Pittsford Plaza shopping center at around noon on November 13, 1993 and driven to Orpheum Alley, where her body was discovered in the vehicle at around 1:35 P.M. The proof of guilt is overwhelming, consisting of identification testimony by two witnesses who observed defendant struggling with the victim, forensic evidence of defendant's fingerprint on the vehicle, admissions made by defendant to a friend and identification of defendant's voice on the tape recording of the victim's 911 call. Additionally, DNA testing by Cellmark Diagnostics, Inc. (Cellmark) established a probability of only one in 10 million that another African American was the source of seminal fluid on the victim.

Defendant failed to preserve for our review his challenge to the legal sufficiency of the evidence with respect to the felony murder conviction (*see, People v Gray*, 86 NY2d 10, 19). In any event, viewing the evidence in the light most favorable to the prosecution (*see, People v Contes*, 60 NY2d 620, 621), we conclude that it is legally sufficient to establish beyond a reasonable doubt that defendant committed felony murder (*see, People v Bleakley,* 69 NY2d 490, 495). We reject defendant's challenges to the weight of the evidence supporting the verdict (*see, People v Bleakley, supra,* at 495).

We reject the contention of defendant that the court erred in denying his motions to strike testimony concerning DNA testing. Cellmark performed a restriction fragment length polymorphism analysis. That type of DNA analysis was held reliable in *People v Wesley* (83 NY2d 417), and Cellmark's procedures and protocols for performing that analysis also have been held reliable (*see, People v Moore,* 194 AD2d 32, 34, *lv denied* 83 NY2d 856; *see also, People v White,* 211 AD2d 982, 984, *lv denied* 85 NY2d 944). There was testimony that Cellmark's data bases, which defendant contends are not random and representative, have been subjected to outside review and generally accepted as reliable in the scientific community. Cellmark was the only private laboratory in the nation certified by the American Society of Crime Laboratory Directors to perform forensic DNA testing, and Cellmark has passed blind proficiency tests. Furthermore, an adequate foundation for the admission of the evidence was established at trial by proof "that the laboratory actually employed the accepted techniques" (*People v Wesley, supra,* at 436 [Kaye, Ch. J., concurring]). Defendant's challenges to the population studies relied upon to estimate the probability of a coincidental match "go not to admissibility, but to the weight of the evidence, which should be left to the trier of fact" (*People v Wesley, supra,* at 427; *see, People v Hall,* 266 AD2d 160, 161, *lv denied* 94 NY2d 901; *People v Vega,* 225 AD2d 890, 893, *lv denied* 88 NY2d 943).

We also reject defendant's contention that Supreme Court erred in failing to charge the jury pursuant to 1 CJI(NY) 7.24 with respect to a monetary reward offered by Crime Stoppers. There is no evidence that any witness was given or promised the reward, or even hoped to receive that reward.

Defendant's further contention that the tape recording of the 911 call is inaudible is not preserved for our review (*see,* CPL 470.05 [2]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see,* CPL 470.15 [6] [a]). We reject defendant's contention that

the tape recording was admitted in evidence without a proper foundation. The 911 operator who received the call verified its accuracy, and the employee who made the tape recording verified the authenticity of the copy (*see, People v Ely*, 68 NY2d 520, 527). We also reject defendant's contention that the court abused its discretion in permitting the use of transcripts of the 911 tape recording as an aid to the jury (*see, People v Norwood*, 142 AD2d 885, *lv denied* 72 NY2d 960). Defendant's contention that, in the absence of a CPL 710.30 notice, it was error to receive testimony concerning the identification of defendant's voice on the 911 tape recording is not preserved for our review (*see*, CPL 470.05 [2]). In any event, the People established in an offer of proof that the witness and defendant knew each other (*see, People v Van Wallendael*, 259 AD2d 716, *lv denied* 93 NY2d 903).

In the absence of any prejudice to defendant, the court did not abuse its discretion in denying defendant's motion to preclude evidence derived from the victim's vehicle on the ground that the vehicle was released to the victim's family and not available for inspection (*see generally, People v Martinez*, 71 NY2d 937, 940). Before the vehicle was released, it was photographed, videotaped, and processed for fingerprints and trace evidence, and diagrams were drawn showing the exact location of the fingerprint lifts. That evidence was retained and available to defendant upon request. Furthermore, the condition of the vehicle, apart from what was shown in the photographs and on the videotape, was never at issue.

Defendant contends that the pretrial identifications of two witnesses were tainted by media coverage and should have been suppressed. Defendant also contends that he should have been permitted to call those witnesses at the *Wade* hearing on the issue of media exposure. The record establishes, however, that the media coverage occurred without any police involvement and thus was not relevant to the pretrial identifications of those witnesses or to the *Wade* hearing (*see, People v Hall*, 258 AD2d 892, 893, *lv denied* 93 NY2d 971; *People v Beaufort-Cutner*, 190 AD2d 992, 994, *lv denied* 81 NY2d 1011; *People v Darnell*, 146 AD2d 583, 584, *lv denied* 73 NY2d 976).

We reject defendant's contention that a new trial is required because of an alleged conflict of interest involving defendant's assigned counsel. The mere existence of a possible conflict of interest is not a ground for reversal without proof that "the conduct of [the] defense was in fact affected by the operation of the conflict of interest" (*People v Alicea*, 61 NY2d 23, 31), and there was no such proof here (*see, People v Allen*, 88 NY2d 831,

832). Contrary to the contention of defendant, we conclude that he received meaningful representation (*see, People v Benevento*, 91 NY2d 708, 712-713).

Defendant contends that he was denied a fair trial by the court's refusal to dismiss summarily potential jurors who indicated on the jury questionnaire that they had formed a prior opinion about the case. It is well settled, however, that "[i]t is not required * * * that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard" (*Irvin v Dowd*, 366 US 717, 722-723; *see, People v Parnes*, 161 AD2d 615, 616; *see also, People v Johnson*, 94 NY2d 600).

Defendant contends that the use of an annotated verdict sheet was reversible error (*see,* CPL 310.20 [2]; *People v Damiano*, 87 NY2d 477, 480). Following a reconstruction hearing ordered by this Court (*see, People v Knight* [appeal No. 1], 274 AD2d 957), the court properly determined based on its own recollection (*see, People v Santorelli*, 95 NY2d 412; *People v Alomar*, 93 NY2d 239, 246-248) that defense counsel expressly consented to the verdict sheet (*see, People v Angelo*, 88 NY2d 217, 224) and that, by failing to object to the verdict sheet after having an opportunity to review it, defense counsel impliedly consented to it as well (*see, People v Brown*, 90 NY2d 872, 874; *cf., People v Gerstner*, 270 AD2d 837). We also reject defendant's contention that the "sentence imposed for the homicide and * * * for the rape" must run concurrently (*see, People v Williams*, 178 AD2d 958, 959, *lv denied* 79 NY2d 954; *People v Ballew*, 161 AD2d 1138, *lv denied* 76 NY2d 852; *People v Woods*, 149 AD2d 550, 551, *lv denied* 74 NY2d 670).

The remaining contentions raised in the brief of defense counsel are not preserved for our review (*see,* CPL 470.05 [2]), and we decline to exercise our power to review those contentions as a matter of discretion in the interest of justice (*see,* CPL 470.15 [6] [a]). We have reviewed the contentions raised by defendant in his *pro se* supplemental brief. Because of the overwhelming proof of guilt, alleged errors occurring during the prosecutor's redirect examination of a witness and during

the prosecutor's summation are harmless beyond a reasonable doubt (*see, People v Crimmins*, 36 NY2d 230, 237). The remaining contentions in the *pro se* supplemental brief are not preserved for our review (*see*, CPL 470.05 [2]) and, in any event, lack merit. (Resubmission of Appeal from Judgment of Supreme Court, Monroe County, Affronti, J.—Murder, 2nd Degree.) Present—Green, J. P., Wisner, Kehoe and Lawton, JJ.