■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KIE M. WASHINGTON, Also Known as KAREEM REED, Also Known as GUNTALK, Appellant. [779 NYS2d 303]—

Mercure, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered September 20, 2002, upon a verdict convicting defendant of the crimes of murder in the second degree, robbery in the first degree (three counts), criminal use of a firearm in the first degree, robbery in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree (six counts), unlawfully wearing a body vest, criminal possession of a controlled substance in the seventh degree, petit larceny, criminal impersonation in the second degree and false personation, and of the violation of unlawful possession of marihuana.

Following a jury trial, defendant was convicted of 19 out of 24 counts charged relating to the murder of Elliott Felder in the City of Schenectady, Schenectady County, and separate incidents involving an armed robbery, as well as defendant's possession of a weapon, wearing of a bullet-proof vest and possession of cocaine and marihuana. Defendant was sentenced and now appeals.

Initially, defendant argues that County Court lacked the authority, in the absence of his consent, to submit to the jury an annotated verdict sheet setting forth the elements of the crimes charged in 10 of the 24 counts. Defendant is correct that, without consent or a statutory exception, the inclusion of such explanatory language "offend[s] the letter of the law" (*People v Damiano,* 87 NY2d 477, 482 [1996]). At the time of defendant's trial, CPL 310.20 (2) provided, in pertinent part, that "[w]henever the court submits two or more counts charging a violation of the same section of a law defining an offense, the court may set forth . . . specific statutory language, without defining the terms, by which the counts may be distinguished." Here, none of the annotations challenged on appeal falls under the same section as other counts charged on the jury sheet and defendant did not *expressly* consent to their submission to the jury.

A defendant may impliedly consent, however, to submission of an annotated verdict sheet (*see People v Brown,* 90 NY2d 872,

874 [1997]). Although "the lack of an objection to the annotated verdict sheet by defense counsel [alone] cannot be transmuted into consent" (*People v Damiano, supra* at 484), where a defendant is given adequate opportunity to review the verdict sheet and objects only to a portion of it, the failure to object to the remainder of the verdict sheet constitutes implicit consent to the remaining annotations (*see People v Knight,* 280 AD2d 937, 940 [2001], *lv denied* 96 NY2d 864 [2001]; *People v James,* 256 AD2d 1149, 1149 [1998], *lv denied* 93 NY2d 875 [1999]; *People v Highsmith [Bird],* 248 AD2d 961, 962 [1998], *lv denied* 91 NY2d 1005, 1008 [1998]; *People v Fecunda,* 226 AD2d 474, 475 [1996], *lv denied* 88 NY2d 936 [1996]; *cf. People v Gerstner,* 270 AD2d 837, 837 [2000]). Here, there was an extended discussion between counsel and County Court regarding the verdict sheet and defense counsel objected to the annotation of four counts other than those challenged on appeal.* Accordingly, based upon the record before us, we find that defendant impliedly consented to the submission of the remaining annotations.

Next, we reject defendant's contention that County Court erred in admitting evidence of his gang-related tattoo bearing the words "war" and "grenade." The People had established that "war" was one of the greetings used by members of the "Kleanerz," a Schenectady-based gang. Thus, the tattoo was probative of defendant's membership in the gang, his relationship with the murder victim—who was also a member of the gang—and motive for the murder, as well as his level of commitment to the gang. Inasmuch as the probative value of the evidence outweighed its potential prejudice to defendant, the evidence was properly admitted (*see People v Cochran,* 302 AD2d 276, 277 [2003], *lv denied* 99 NY2d 653 [2003]; *People v Reynolds,* 283 AD2d 771, 774 [2001], *lv denied* 96 NY2d 866 [2001]; *People v Perez,* 265 AD2d 347, 348 [1999], *lv denied* 94 NY2d 827 [1999]).

Also unavailing is defendant's argument that he was denied

---

* Regarding the annotation of the four counts to which defendant objected, County Court deleted all the descriptive language from count 20, as defendant requested and defendant now concedes that the annotations to counts 9, 10 and 11 were proper under CPL former 310.20 (2) because those counts fall under the same section, Penal Law § 160.15. We note that CPL 310.20 (2) has been amended effective September 24, 2002, after defendant's conviction, to provide that annotations are permissible when two or more counts charge offenses set forth in the same *article* of the law. Our decision that defendant impliedly consented to the submission of the challenged annotations obviates the need to determine whether the amendment operates retroactively to authorize the use of any of the challenged annotations here (*see generally People v Anderson,* 306 AD2d 536, 536-537 [2003], *lv denied* 1 NY3d 594 [2004]).

the effective assistance of counsel. In reviewing an ineffective assistance of counsel claim, we must "avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis'" (*People v Benevento*, 91 NY2d 708, 712 [1998], quoting *People v Baldi*, 54 NY2d 137, 146 [1981]). Here, defendant alleges that counsel erred in failing to object to references to defendant's nickname, "Guntalk," his unemployment and a prior uncharged robbery attempt, as well as improperly eliciting testimony regarding a firearm that was not used in any of the crimes with which defendant was charged.

Contrary to defendant's argument, counsel did object to the use of the nickname during a pretrial *Ventimiglia* hearing. The parties agreed that some reference to the name was unavoidable because some witnesses knew defendant only by that name and that witnesses would be instructed to refer to defendant by his given name. In our view, if defense counsel had objected each time the name was used—or, for that matter, to the reference to defendant's unemployment—the objections would have merely highlighted this information for the jury. The testimony that defense counsel elicited regarding the uncharged robbery and defendant's ownership of guns was inadvertent and, in light of defendant's lifestyle and relationship to the testifying witnesses, unavoidable. Although defendant argues that counsel should have requested limiting instructions regarding this testimony, we note that County Court did instruct the jury that evidence of prior uncharged bad acts could not be considered indicative of the propensity to commit crimes. Finally, a review of the record reveals that defense counsel successfully made pretrial motions to suppress incriminating statements made by defendant to parole officers, sever as unduly prejudicial 10 counts from the indictment, and preclude the People from eliciting testimony regarding much of the evidence in their *Sandoval* and *Molineux* proffers. In addition, defense counsel participated actively in jury selection and the charge conference, vigorously cross-examined key witnesses, raised appropriate trial objections and presented viable defenses. We conclude that "the circumstances of [defendant's] particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi, supra* at 147).

We agree with defendant, however, that Penal Law § 70.25 (2) precluded the imposition of consecutive sentences on his murder and related weapons possession convictions. Defendant was convicted of murder in the second degree on a theory of intentional murder (*see* Penal Law § 125.25 [1]) and of two

counts of criminal possession of a weapon in the third degree (*see* Penal Law § 265.02). He was sentenced to concurrent prison terms of 3¹/₂ to 7 years and seven years for the weapons possession convictions and a consecutive prison term of 25 years to life for the murder conviction. Although the People now assert that the crime of possession was separate and distinct from the crime of murder, they failed to allege at trial that defendant possessed the gun for any purpose other than the murder (*see People v Geddes,* 258 AD2d 679, 681 [1999], *lv denied* 93 NY2d 970 [1999]; *cf. People v Salcedo,* 92 NY2d 1019, 1022 [1998]; *People v Rivenburgh,* 1 AD3d 696, 701 [2003], *lv denied* 1 NY3d 579 [2003]; *see generally People v Brown,* 80 NY2d 361, 364-365 [1992]). Thus, the sentences upon these convictions must run concurrently.

We have considered defendant's remaining arguments, including his assertions that his sentence of 62¹/₂ years to life was excessive and that County Court improperly permitted the People to cross-examine him regarding a prior guilty plea to criminal possession of a controlled substance in the fifth degree, and conclude that they are unsupported by the record or otherwise meritless.

Cardona, P.J., Crew III, Peters and Kane, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as imposed the sentence for murder in the second degree under count one of the indictment to run consecutively to the sentences imposed for criminal possession of a weapon in the third degree under counts six and seven of the indictment; said sentences to run concurrently with each other; and, as so modified, affirmed.