■■■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH WALLACE, Appellant. [873 NYS2d 403]—

Appeal from a judgment of the Erie County Court (Timothy J. Drury, J.), rendered August 3, 1994. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, criminal possession of a weapon in the fourth degree and unauthorized use of a vehicle in the first degree.

It is hereby ordered that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [1]), defendant contends that County Court erred in admitting in evidence a recording of a rap song along with a copy of its lyrics. We reject defendant's contention, and we conclude that the rap song was admissible as evidence of defendant's consciousness of guilt. Although "evidence of consciousness of guilt . . . has limited probative value . . . , its probative weight is highly dependent upon the facts of each particular case" (*People v Cintron*, 95 NY2d 329, 332-333 [2000]). Here, the evidence presented at trial established that defendant played a cassette tape of his favorite rap song, entitled "How I Could Just Kill a Man," two or three times over the course of two five-minute car rides shortly after the homicide. The lyrics of the song describe a murder occurring under similar circumstances as those present in the instant case. We agree with defendant insofar as he contends that owning a cassette tape of rap music in general, or of any rap song in particular, is not relevant to the murder charge (*see generally United States v McCrea*, 583 F2d 1083, 1086 [1978]). The rap song here, however, was not admitted in evidence merely for the purpose of establishing that defendant generally enjoyed rap music. Instead, the People sought to shed light on the circumstances under which defendant listened to the song, and thus the rap song was properly admitted as evidence of defendant's consciousness of guilt (*see generally Cintron*, 95 NY2d at 332). Moreover, although the lyrics to rap music can at times be violent and inflammatory and thus may be prejudicial to defendants, the court here alleviated any such prejudice by giving an adequate limiting instruction, which the jury is presumed to have followed (*see generally People v Curtis*, 286 AD2d 900, 901 [2001], *lv denied* 97 NY2d 728 [2002]).

Defendant did not make a specific objection to the prosecutor's cross-examination of him concerning his drug sale activities, and he made no objection with respect to the cross-examination of him concerning his acting experience. Defendant thus failed

to preserve for our review his contentions that he was denied a fair trial by the cross-examination on those subjects (*see* CPL 470.05 [2]), and we decline to exercise our power to review them as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). With respect to the further contention of defendant that he was denied a fair trial by prosecutorial misconduct on summation, we note that defendant moved for a mistrial on that ground. The court denied defendant's motion and instead gave a curative instruction. In view of the fact that defendant failed to seek further relief or to object after that curative instruction was given, the curative instruction "must be deemed to have corrected the alleged errors to defendant's satisfaction" (*People v Dunham*, 261 AD2d 909, 909 [1999], *lv denied* 93 NY2d 1017 [1999]). In any event, we note that the prosecutor's comments on summation were a fair response to defense counsel's summation (*see People v Halm*, 81 NY2d 819, 821 [1993]; *People v West*, 4 AD3d 791 [2004]). Present—Hurlbutt, J.P., Centra, Fahey and Peradotto, JJ.