[926 NYS2d 43]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEDAR-
RIUS WRIGHT, Appellant.

First Department, June 21, 2011

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Barbara Zolot* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Christopher P. Marinelli* and *Eleanor J. Ostrow* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In his appeal from convictions for first-degree murder and second-degree criminal possession of a weapon, the defendant claims that the court erred in imposing consecutive sentences because he acted with singular intent during one criminal transaction. However, recent Court of Appeals decisions reiterate that the test for determining the legality of consecutive sentences is "not whether the criminal intent is one and the same [in each crime] . . . , but whether separate acts have been committed with the requisite criminal intent." (*See People v McKnight*, 16 NY3d 43, 49 [2010] [internal quotation marks and citations omitted]; *People v Frazier*, 16 NY3d 36, 41 [2010].) Because there is no overlap of statutory elements in the crimes committed by the defendant, the imposition of consecutive sentences was lawful.

Testimony at trial adduced the following: The murder of two young people in 2005 on West 133rd Street, Manhattan, occurred after a series of altercations between two groups of residents on the street. One group was comprised of the defendant, his brother Curtis Wright and their friend Tamara Brown. The other group, reportedly members of the Bloods street gang, included the two victims, Doneil Ambrister and Yvette Duncan, who were shot as they walked along the street at approximately 1:00 A.M.

Trial testimony further established that, in the hours immediately prior to the shootings, the two groups were involved

in an argument, and soon afterwards in a physical altercation in which Curtis Wright was struck in the forehead with a belt buckle. A witness testified that she saw a gun in the defendant's hand during that altercation.

A few hours later, the defendant approached Ambrister in the street as Ambrister walked back from a bodega with Duncan and several others. A witness for the People testified that the defendant then said something to the effect of "So, I can't live on this block no more." Ambrister, Duncan and another member of the group, Mack Bruce, indicated they did not want to talk to the defendant, and started to walk away. The defendant also appeared to be walking away.

However, according to four witnesses who testified, instead of walking away, the defendant drew a gun from his shorts. He then chased down Ambrister and shot him, fired at Duncan till she collapsed, and pointed the gun at Mack Bruce's head but the gun appeared to jam. Ambrister and Duncan died as a result of the shooting. Eyewitnesses identified the defendant as the shooter to police officers who arrived on the scene minutes later.

After a jury trial, the defendant was convicted of one count of first-degree murder pursuant to Penal Law § 125.27 (1) (a) (viii) and second-degree criminal possession of a weapon pursuant to Penal Law § 265.03 (1) (b). The court sentenced him to consecutive terms of 25 years to life for first-degree murder and 15 years on the weapon-possession conviction, for an aggregate term of 40 years to life.

On appeal, the defendant argues that the court erred in imposing consecutive sentences on the grounds that the People did not charge him with weapon possession unrelated to the murders, nor did they allege or prove that he possessed a gun with a separate intent to use it unlawfully against another. He asserts that the evidence demonstrates he acted with a singular intent during one criminal transaction.

In so arguing, the defendant, like the dissent, relies almost exclusively on *People v Hamilton* (4 NY3d 654 [2005]), a case where the Court found concurrent sentences were mandated after defendant was convicted of assault, manslaughter and second-degree weapon possession. The Court held that, for defendant "to be sentenced consecutively on the weapon charge, it would have been necessary for the People to establish that he *possessed the pistol with a purpose unrelated to his intent to shoot* [the victims]." (*People v Hamilton*, 4 NY3d at 658 [emphasis added].)

It appears, however, that the more recent Court of Appeals decisions departing from *Hamilton* are more in tune with the Court's pre-*Hamilton* authority, and explain why the Court has not cited *Hamilton* as a precedent. Indeed, while the defendant argues that there are "numerous cases" supporting the holding in *Hamilton*, the Court's sub silentio rejection of the case is evident in its subsequent decisions. (*People v Taveras*, 12 NY3d 21 [2009]; *People v McKnight*, 16 NY3d 43 [2010], *supra*; *People v Frazier*, 16 NY3d 36 [2010], *supra*.) Hence, for the reasons set forth below, the sentencing court was acting within its discretion in imposing consecutive sentences.

Penal Law § 70.25 (2) mandates concurrent sentences "for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other." For the purposes of determining overlap as to the second prong of the statute, "the commission of one offense is a material element of a second . . . if, by comparative examination, the statutory definition of the second crime provides that the *first crime is also a necessary component* in the legislative classification and definitional sense." (*People v Day*, 73 NY2d 208, 211 [1989] [emphasis added].)

It is well established, then, that to arrive at a sentencing determination, the court must "examine the statutory definitions of the crimes for which [a] defendant has been convicted." (*People v Laureano*, 87 NY2d 640, 643 [1996].)* Because both prongs of Penal Law § 70.25 (2) refer to an "act or omission," that is, to the actus reus that constitutes the offense, "the court must determine whether the *actus reus* element is, by definition, the same for both offenses . . . or if the *actus reus* for one offense is, by definition, a material element of the second offense." (*Id.*)

The actus reus of a crime is the "wrongful deed that comprises the *physical* components of a crime." (*People v Rosas*, 8 NY3d 493, 496 n 2 [2007] [emphasis added; internal quotation marks omitted].) The test, therefore, is not whether the criminal intent is one and the same and inspiring the whole transaction but whether separate acts have been committed with the requisite criminal intent. (*People v Day*, 73 NY2d at 211; *see also People v McKnight*, 16 NY3d at 49 [where an actus reus

---

* The record does not reflect that the sentencing court conducted an examination of the statutory definitions. However, there is no requirement mandating that such examination be conducted on the record.

consists of repetitive, discrete acts, these acts do not "somehow merge" where the same criminal intent inspires the whole transaction].)

Despite their citation in *Hamilton*, neither of the two Court of Appeals cases relied upon by the dissent stands for the proposition that the People must show defendant's separate and distinct intent. In *People v Parks*, the Court imposed a sentence for criminal possession of a weapon running concurrently with sentences for felony murder and four counts of robbery. (95 NY2d 811, 814 n 1 [2000].) Two of the robbery convictions were based on the defendant's possession of a loaded gun. (95 NY2d at 813.) Thus, it was the overlap of the statutory element of physical possession of the weapon that served as a basis for the imposition of concurrent sentences. Similarly, in *People v Sturkey*, the sentences ran concurrently because the crimes of third-degree robbery and third-degree criminal possession of a weapon both arose from the defendant physically taking possession of the gun. (77 NY2d 979, 980-981 [1991].)

Here, the defendant was convicted of first-degree murder pursuant to Penal Law § 125.27 (1) (a) (viii) which, in relevant part, states:

> "A person is guilty of murder in the first degree when:
>
> "1. [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . .
>
> "(viii) as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person or persons, causes the death of an additional person."

He was additionally convicted of second-degree weapon possession pursuant to Penal Law § 265.03 (1) (b) which, in relevant part, states: "[a] person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another . . . [he] possesses a loaded firearm."

The People correctly assert that the actus reus of the first-degree murder statute in this case is the causing of death of two or more persons with no requirement that it be by shooting, stabbing or any other method employing a weapon, and that the actus reus of second-degree criminal weapon possession is possession of a loaded operable firearm with no requirement that,

in fact, it be employed in any way, much less lethally. Hence, these are separate and distinct acts.

Further, since for sentencing purposes a court must focus on the statutory definition of an offense, there is no merit in the defendant's argument that the People, at trial, intertwined defendant's intent to use his weapon unlawfully with the fatal shootings of the two victims. It is true that the People, in summation, stated that the defendant "possessed a gun and intended to use that gun unlawfully . . . There's no doubt about his intent since he actually did use the gun unlawfully against two others."

However, that does not help the defendant for sentencing purposes. (*See People v Day*, 73 NY2d at 211 ["(r)eference to the fact-specific circumstances and proof of a crime to determine whether, under the second statutory prong, one offense is a material element of a second is *not* the test for consecutive sentencing purposes" (emphasis added)].) Indeed, the defendant's argument that the intent component of the weapon-possession charge results in a statutory overlap because the People did not establish an intent separate from the intentional, fatal shootings is precisely the rationale that the Court of Appeals rejected in *People v Taveras* (12 NY3d 21 [2009], *supra*) and most recently in *People v Frazier* (16 NY3d 36 [2010], *supra*).

In *Taveras*, the Court rejected the argument that a criminal sexual act (sodomy) constituted a material element of first-degree falsifying of business records where defendant asserted that the statutory definition of the latter offense included intent to conceal a crime, in this case the sodomy. (12 NY3d at 26-27 [the statutory definition of falsifying business records in the first degree which includes an intent to commit or conceal a crime does not render the first crime (sodomy) "a necessary *component* (of the second crime) in the legislative classification and definitional sense" (internal quotation marks and citation omitted)].)

Similarly, in *Frazier*, the defendant argued that sentences imposed for his burglary and larceny convictions should run concurrently because larceny was the crime that satisfied burglary's intent requirement. (16 NY3d at 41.) This Court agreed that defendant's larceny was the only crime that fulfilled the " 'intent to commit a crime' " element of burglary, and that, therefore "the two acts—the entering of a dwelling for the sole purpose of stealing, and the actual taking of the property—cannot logically be considered separate and distinct acts."

(*People v Frazier*, 58 AD3d 468, 469 [1st Dept 2009].) The Court of Appeals disagreed. In a particularly instructive ruling, it held, instead, that "[t]he crime of burglary was completed when defendant entered [each apartment] with the intent to commit a crime. The ensuing larceny was a separate crime, perpetrated through defendant's separate act of stealing property." (*People v Frazier*, 16 NY3d at 41 ["larceny is not a *necessary* component of burglary" (emphasis added)].)

The holding in *Frazier* would appear to foreclose the argument in this case that the shootings of the victims are the only crimes that satisfy the "intent-to-use-unlawfully" element of the weapon-possession charge and hence they are not separate and distinct acts. The criminal weapon-possession offense is a possessory act, the actus reus of which is complete once the defendant has "dominion and control of a weapon." (*See e.g. People v McKnight*, 16 NY3d at 50 ["there are no more *acts* (a defendant) can take to advance that offense" (emphasis added)].) Criminal weapon possession is not a necessary component of first-degree murder.

We also decline to reduce the sentences in the interest of justice. We have considered defendant's arguments concerning the prosecutor's summation and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Thomas Farber, J.), rendered April 16, 2009, convicting defendant, after a jury trial, of murder in the first degree and criminal possession of a weapon in the second degree, and sentencing him to consecutive terms of 25 years to life and 15 years, respectively, should be affirmed.

TOM, J.P. (dissenting in part). The shooting in this case arose from tensions developed from the confrontations between two rival groups of individuals who lived in the same neighborhood. Shortly after several fights had broken out between members of the two groups, one of which had occurred earlier that same evening involving defendant and his friends, defendant returned to the scene with a gun and shot two members of the rival group, Doneil Ambrister and Yvette Duncan, killing them. He was convicted of the murders and criminal possession of a weapon in the second degree. The sentence on the weapon count, imposed to run consecutively with the sentence on the murder charges, is unlawful.

This matter is governed by *People v Hamilton* (4 NY3d 654 [2005]), which is indistinguishable and dispositive of the sentencing issue. There, as here, the defendant shot two

persons and was convicted of both the shootings and criminal possession of a weapon in the second degree, for which the trial court likewise imposed consecutive sentences. With respect to the requisite "intent to use [the gun] unlawfully against another" (Penal Law § 265.03 [1]), the Court of Appeals noted, "[t]here is no doubt as to who the other person or persons were" (4 NY3d at 658). Here, defendant's intent to use the gun against the victims was clear. A short time after the two groups had the physical altercation, earlier that evening when defendant's friend, Curtis, was struck in the forehead with a belt buckle, drawing blood, defendant returned with a gun and confronted the rival group. Before shooting the victims, defendant approached Ambrister and said something to the effect of, "[Y]ou said we couldn't come back to the block," or "So, I can't live on this block no more." As Ambrister attempted to run defendant shot him. As Ambrister fell to the ground defendant approached Duncan and another individual, Mack Bruce. Defendant shot Duncan and then, pointed the gun at Bruce's head and pulled the trigger, but the gun apparently jammed. As here, "[t]here is no allegation that the weapon count referred to a different pistol or a different event and the prosecution does not contend otherwise" (*Hamilton* at 658). In the absence of proof of a distinct intent to use the gun unlawfully, the weapon count overlapped the charges arising out of the shooting of the two victims (Penal Law § 70.25 [2]).

The Court of Appeals held that the trial court had violated Penal Law § 70.25 (2), stating that to impose consecutive sentences on the defendant, it would have been necessary "to establish that he possessed the pistol with a purpose unrelated to his intent to shoot Roberts and Smith" (4 NY3d at 658). The Court added that the rule prohibiting consecutive sentences where "the weapon possession was not separate and distinct from the shootings" (*id.* at 659) has been consistently applied (*see People v Parks*, 95 NY2d 811 [2000]; *People v Sturkey*, 77 NY2d 979 [1991]; *People v Washington*, 9 AD3d 499 [2004], *lv denied* 3 NY3d 682 [2004]). While the majority's intricate reasoning suggests that it is possible to reach a contrary result, the principle of stare decisis compels adherence to established precedent, as expressed in *Hamilton*, a recent Court of Appeals ruling on all fours.

Accordingly, the judgment should be modified to the extent of directing that the sentences run concurrently.

FRIEDMAN, RENWICK and ABDUS-SALAAM, JJ., concur with CATTERSON, J.; TOM, J.P., dissents in part in a separate opinion.

Judgment, Supreme Court, New York County, rendered April 16, 2009, affirmed.