■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND R. BJORK, Appellant. [963 NYS2d 472]—

Garry, J. Appeal from a judgment of the County Court of St. Lawrence County (Richards, J.), rendered November 24, 2010, upon a verdict convicting defendant of the crimes of criminal sexual act in the first degree (two counts), sexual abuse in the first degree, rape in the first degree, sexually motivated felony and unauthorized use of a vehicle in the third degree.

In February 2009, the victim, who had spent an evening drinking in the City of Ogdensburg, St. Lawrence County, encountered defendant at a bar. Defendant allegedly approached the victim and "brush[ed] up against her" repeatedly in spite of her efforts to rebuff him. The victim became ill due to her intoxication, and her cousin, the cousin's husband and defendant took her to her home later that night. The cousin and defendant assisted the victim upstairs and put her to bed, where the victim allegedly asked the cousin to make sure defendant left the house, and then fell asleep. The cousin testified that defendant refused to leave the house at her request and did not do so until the cousin's husband intervened. The cousin and husband offered defendant a ride to his home but, at his request, dropped him off instead at a friend's apartment that was closer to the victim's home. Sometime during the next hour, the victim allegedly awoke to find defendant in her bed, having vaginal intercourse with her.

The initial grand jury indictment charging defendant with several counts was dismissed by County Court. The People then obtained DNA evidence and, with leave from the court, re-presented the case to a new grand jury. Defendant was indicted on seven counts, including some upon which the first grand jury had deadlocked. He moved to dismiss the previously deadlocked counts on the ground that his statutory speedy trial rights had

been denied, and the court denied the motion. Following a jury trial, defendant was found guilty of criminal sexual act in the first degree (two counts), sexual abuse in the first degree, rape in the first degree, burglary in the second degree as a sexually motivated felony and unauthorized use of a vehicle in the third degree. County Court sentenced him as a second violent felony offender to concurrent prison terms of 15 years on the criminal sexual act counts, 15 years on the sexually motivated felony count, seven years on the sexual abuse count and one year for unauthorized use of a vehicle, with 15 years of postrelease supervision. He was further sentenced to a prison term of 18 years on the rape count with 20 years of postrelease supervision, to run consecutively with his sentences on the other counts. Defendant appeals.

Initially, we reject defendant's claim that he was denied his statutory right to a speedy trial as to the charges on which the first grand jury deadlocked. Pursuant to CPL 30.30 (1) (a), the People must be ready for trial within six calendar months of the commencement of a criminal action charging a defendant with a felony, "which occurs with the filing of the first accusatory instrument" (*People v Prunier*, 100 AD3d 1269, 1270 [2012]). Here, the action was commenced by filing a felony complaint on February 14, 2009, and the People declared readiness for trial 10 days later. The first indictment was dismissed on September 28, 2009, and the People declared readiness on the second indictment 38 days thereafter on November 5, 2009, for a total of only 48 days chargeable to the People. Contrary to defendant's claim, the speedy trial "clock" did not continue to run after the first declaration of readiness as to the charges on which the grand jury deadlocked. These charges were "directly derived" from the first accusatory instrument (CPL 1.20 [16] [b]), and as they are "sufficiently related to apply the same commencement date, they are likewise sufficiently related for purposes of applying excludable time" (*People v Farkas*, 16 NY3d 190, 194 [2011]; *see People v Sinistaj*, 67 NY2d 236, 237 [1986]; *People v Pope*, 96 AD3d 1231, 1232 [2012]; *People v Galloway*, 93 AD3d 1069, 1070 [2012], *lv denied* 19 NY3d 996 [2012]).

Next, defendant contends that, with the exception of the conviction for unauthorized use of a vehicle in the third degree, his convictions are not supported by legally sufficient evidence. Although he failed to preserve this claim by renewing his trial motion to dismiss following the People's presentation of rebuttal evidence (*see People v Valentin*, 95 AD3d 1373, 1374 [2012], *lv denied* 19 NY3d 1002 [2012]; *People v Garcia*, 79 AD3d 1248, 1250 [2010], *lv denied* 16 NY3d 797 [2011]), he also challenges

the weight of the evidence, and such review requires this Court to determine whether evidence supports each element of the crimes (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Townsend*, 94 AD3d 1330, 1330 n 1 [2012], *lv denied* 19 NY3d 1105 [2012]). We find that defendant's convictions of criminal sexual act in the first degree must be reversed. "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him [or her] without additional proof that the offense charged has been committed" (CPL 60.50). While this additional proof "need not corroborate every detail of the confession" (*People v Morgan*, 246 AD2d 686, 686 [1998], *lv denied* 91 NY2d 975 [1998]), both of defendant's criminal sexual act convictions were based solely upon his uncorroborated admissions that he performed oral sex on the victim. Defendant's presence at the scene did not provide the necessary corroboration because the issue is not his identity or connection to the crime but, instead, whether the crimes occurred at all. As there was no corroborating proof "of whatever weight," these charges must be dismissed (*People v Daniels*, 37 NY2d 624, 629 [1975]; *see People v Porlier*, 55 AD3d 1059, 1062 [2008]; *People v McAuliffe*, 220 AD2d 859, 860-861 [1995]).

We reject defendant's contention that the People did not meet their burden to prove that the victim was physically helpless. For purposes of defendant's convictions for sexual abuse in the first degree and rape in the first degree, a person is physically helpless when he or she "is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]; *see* Penal Law §§ 130.35 [2]; 130.50 [2]; 130.65 [2]). A person who is asleep or unable to communicate as a result of voluntary intoxication is considered to be physically helpless (*see People v Morrow*, 304 AD2d 1040, 1042 [2003], *lv denied* 100 NY2d 564 [2003]; *People v Himmel*, 252 AD2d 273, 275-276 [1999], *lv denied* 93 NY2d 899 [1999]). Here, the victim testified that she consumed a substantial amount of alcohol on the evening in question, was intoxicated from the time she visited the bar where she met defendant until she arrived at the hospital the following morning and, as a result, has little memory of the latter part of the evening and no memory at all of the period when she was at home before waking to find defendant in her bed. Other witnesses who were with the victim that night testified that she was very intoxicated, slurred her words, staggered, was nauseous, could not keep her head up while speaking and fell asleep upon being put to bed. A police officer who interviewed her at the hospital the next morning testified that her eyes were bloodshot and she smelled of alcohol, and a test administered at 9:45 a.m. revealed that her blood alcohol content was .09.

Defendant did not testify at trial but, in his testimony before both grand juries—which was read to the trial jury—he claimed, among other things, that the victim was "[n]ot intoxicated to the point where she didn't know what was going on" and that, when he returned to her house after being dropped off at his friend's home, she answered the door and let him inside. He asserted that she then initiated sexual contact between them and allowed him to perform oral sex on her and to insert his fingers into her vagina. However, he denied that any vaginal intercourse occurred, claiming that he could not achieve an erection and that, upon realizing this, the victim directed him to get off her and leave, which he did. Notably, whether a victim is physically helpless is a question of fact for the jury to resolve and, upon our independent review, we find no reason to disturb its credibility determinations in this regard (see People v Manning, 81 AD3d 1181, 1181 [2011], lv denied 18 NY3d 959 [2012]; People v Thomas, 21 AD3d 643, 645 [2005], lv denied 6 NY3d 759 [2005]; People v Sensourichanh, 290 AD2d 886, 887-888 [2002]).

Given this conclusion, the victim's testimony that vaginal intercourse was occurring when she awoke, and DNA test results indicating that defendant's sperm was present in her vagina, we find that defendant's conviction for rape in the first degree is not against the weight of the evidence (see People v Shepherd, 83 AD3d 1298, 1298-1299 [2011], lv denied 17 NY3d 809 [2011]; People v Fuller, 50 AD3d 1171, 1174 [2008], lv denied 11 NY3d 788 [2008]). Likewise, based on the DNA evidence and defendant's admission that he placed his fingers—with sperm on them resulting from a premature orgasm—in the victim's vagina, we will not disturb the conviction for sexual abuse in the first degree (see People v Wicks, 73 AD3d 1233, 1234 [2010], lv denied 15 NY3d 857 [2010]; People v Fuller, 50 AD3d at 1174-1175; People v Stasiak, 25 AD3d 1025, 1026 [2006]).

Defendant did not, as he contends, prove his affirmative defense that, at the time he committed the sexual offenses based on physical helplessness, he "did not know of the facts or conditions responsible for [the victim's] incapacity to consent" (Penal Law § 130.10 [1]). In this regard, he relies on his grand jury testimony that the victim was neither unconscious during their encounter nor so intoxicated that she did not understand what was occurring, as well as expert trial testimony to the effect that the victim would have shown no signs—other than heavy intoxication—of the "blackout" that later kept her from remembering the encounter. However, the jury was not required to credit defendant's version of events, and plainly did not do so. Given the victim's testimony that she awoke from sleep to

find defendant having sex with her and the extensive evidence of her severe intoxication while in defendant's company shortly before the offenses were committed—including testimony that she was barely conscious when she reached her home and almost immediately fell asleep—we have no difficulty in concluding that defendant did not meet his burden to establish this defense by a preponderance of the evidence (*see* Penal Law § 25.00 [2]).

We are unpersuaded by defendant's claim that his conviction for burglary in the second degree as a sexually motivated felony must be reversed because the People failed to prove beyond a reasonable doubt that he entered the victim's home "when he [was] not licensed or privileged to do so" (Penal Law § 140.00 [5]; *see* Penal Law §§ 130.91 [1]; 140.25). Defendant claims that the victim let him into her home, and he argues that this is the only reasonable explanation for his presence inside, given the undisputed evidence that the door was locked and the absence of any showing of forced entry. However, no such showing was required (*see e.g. People v Berry*, 275 AD2d 748, 748 [2000], *lv denied* 96 NY2d 732 [2001]). The victim testified that she did not let defendant in and that she was asleep before she woke to find defendant in her bed. While she qualified this testimony by acknowledging on cross-examination that she had no memory of the time period in question and did not know whether or not she opened the door, the jury was free to accept or reject any testimony and was not required to credit defendant's claim that she did so (*see People v Hargett*, 11 AD3d 812, 814 [2004], *lv denied* 4 NY3d 744 [2004]). There was considerable evidence that the victim had repeatedly rebuffed defendant's attentions earlier in the evening and, after allowing him to help her to return home, had stated that she did not want him to remain there. The cousin testified that when she left the victim's home with defendant, he told her that the door was locked but that she checked, and in fact it was not. He offered several inconsistent explanations for his subsequent refusal of the offer of a ride to his own home and his surreptitious return to the victim's home. Finally, in addition to testimony that the victim sometimes left a spare key in her mailbox, there was evidence that defendant had used the victim's keys earlier that evening and no clear proof beyond his own testimony that he gave them back before he returned to her home.

The People also offered the testimony of a police officer who, in an experiment conducted the next day, used a credit card to open the door. However, there was no evidence that defendant knew how to "card" a door in this fashion, no witness testified that he had any credit cards with him on the night in question,

and no cards were found on his person when he was arrested shortly thereafter. The results of a test of this nature are admissible only when the conditions under which it was conducted are sufficiently similar to make the result relevant (*see* Jerome Prince, Richardson on Evidence § 4-219 [Farrell 11th ed 1995]). Here, there was no "substantial similarity" (*People v Cohen*, 50 NY2d 908, 910 [1980]) and, given the speculative nature of this test, defendant's objection to the admission of this testimony should have been sustained (*see People v Walker*, 274 AD2d 600, 602 [2000]; *compare People v Estrada*, 109 AD2d 977, 978-979 [1985]). In view of the other evidence, however, we find that this error was harmless, and according deference to the jury's credibility determinations, we find no reason to disturb its verdict on the burglary charge (*see People v Hargett*, 11 AD3d at 814; *People v Matuszek*, 300 AD2d 1131, 1131-1132 [2002], *lv denied* 99 NY2d 630 [2003]; *People v Webster*, 290 AD2d 659, 659-660 [2002], *lv denied* 98 NY2d 641 [2002]; *see also People v Ryan*, 180 AD2d 769, 769 [1992], *lv denied* 79 NY2d 1054 [1992]).

Contrary to his claim, defendant received the effective assistance of counsel. Defendant's primary complaint addresses his counsel's failure to renew his trial motion to dismiss following the People's presentation of rebuttal testimony. However, " '[t]he constitutional right to the effective assistance of counsel does not mean that the representation was error free in every respect, but simply that defendant was afforded a fair trial' " (*People v Jackson*, 48 AD3d 891, 893 [2008], *lv denied* 10 NY3d 841 [2008], quoting *People v Damphier*, 13 AD3d 663, 664 [2004]). Defendant concedes that this single failure was not "sufficiently egregious and prejudicial" to deprive him of that right (*People v Caban*, 5 NY3d 143, 152 [2005]). Although he contends that other errors occurred, we find none rising to the level of ineffective assistance. Defendant's claim that his counsel should have made various objections is unsupported by any showing that these objections were meritorious or that counsel had no strategic reason for failing to make them (*see People v Taylor*, 1 NY3d 174, 177-178 [2003]), and counsel did make many successful objections in the course of the trial. Viewed as a whole, the record reveals that counsel also made appropriate pretrial motions, pursued a credible—though ultimately unsuccessful—theory of defense, conducted vigorous cross-examination of the People's witnesses, and otherwise provided defendant with meaningful representation (*see People v Jordan*, 99 AD3d 1109, 1110-1111 [2012], *lv denied* 20 NY3d 1012 [2013]; *People v Bahr*, 96 AD3d 1165, 1166-1167 [2012], *lv denied* 19 NY3d 1024 [2012]).

Defendant next objects to factual annotations on the verdict sheet, contending that he did not consent to them and that they were so prejudicial as to require reversal. As defendant argues, the inclusion of such notations without statutory authorization or his consent "offend[s] the letter of the law" (*People v Washington*, 9 AD3d 499, 500 [2004], *lv denied* 3 NY3d 682 [2004] [internal quotation marks and citation omitted]; *see* CPL 310.20 [2]), and the record reveals no express consent. However, "where a defendant is given adequate opportunity to review the verdict sheet and objects only to a portion of it, the failure to object to the remainder of the verdict sheet constitutes implicit consent to the remaining annotations" (*People v Washington*, 9 AD3d at 501; *see People v Johnson*, 96 AD3d 1586, 1587 [2012], *lv denied* 19 NY3d 1027 [2012]). Here, after reviewing the verdict sheet, defense counsel objected to an unspecified "typo" but did not mention the annotations, and did not object when County Court advised the jury that the attorneys had "approved" the verdict sheet. Accordingly, defendant's consent is implied.

Finally, defendant contends that his sentence is harsh and excessive. Given defendant's criminal history and his failure to take responsibility for his actions, we find no extraordinary circumstances or abuse of discretion warranting modification of the sentences, the aggregate of which are less than the maximum allowable for his convictions (*see People v Hemingway*, 85 AD3d 1299, 1303 [2011]; *People v Lopez-Aguilar*, 64 AD3d 1037, 1038 [2009], *lv denied* 13 NY3d 940 [2010]).

Peters, P.J., Spain and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the facts, by reversing defendant's convictions for criminal sexual act in the first degree under counts 1 and 2 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.