# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1198**

**KA 11-01585**

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                               MEMORANDUM AND ORDER

JOYCE E. POWELL, DEFENDANT-APPELLANT.

---

MARCEL J. LAJOY, ALBANY, FOR DEFENDANT-APPELLANT.

JOYCE E. POWELL, DEFENDANT-APPELLANT PRO SE.

JOSEPH V. CARDONE, DISTRICT ATTORNEY, ALBION, FOR RESPONDENT.

---

Appeal from a judgment of the Orleans County Court (James P. Punch, J.), rendered August 1, 2011. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting her, following a jury trial, of murder in the second degree (Penal Law § 125.25 [1]) arising from the 1992 shooting death of the victim. The trial evidence established that, several weeks before the murder, defendant confronted the victim, who was an acquaintance of defendant, with a small handgun and threatened to kill him because he owed defendant money. On the night of the murder, the victim was at a bar with defendant and two other men, and a bartender observed the group leave and drive away in a black car with a red top. The bartender's description of the car matched defendant's car. After leaving the bar, according to one of the men—a passenger riding in the back seat, defendant stopped the car along a road where defendant, the victim, and the other man exited the car. The backseat passenger heard an argument followed by six or seven gunshots. Defendant and the other man returned to the car without the victim and drove away. Thereafter, the victim's body was discovered along a rural road, and an earring in the victim's earlobe was missing its back. A subsequent autopsy revealed that the victim had been shot several times. The day after the victim's body was discovered, defendant admitted to the victim's sister that she was with the victim on the night in question, but claimed that she had left the victim at a party.

Ten days after the victim's body was discovered, the police made an unrelated traffic stop of defendant's black car with a red top, and they observed two live rounds of ammunition inside the car. During a

search of the car, police recovered the back to an earring from the floor of the back seat and a cassette tape from the floor of the front passenger seat.  Police also recovered a gun in the hatchback area of the car.  Ballistics testing of the gun linked it to bullets recovered from the victim's body during the autopsy, and sales receipts connected defendant to the out-of-state purchase of ammunition for the gun in the weeks before the murder.

Prior to trial, police discovered that the cassette tape recovered from defendant's car contained a rap song with lyrics paralleling the circumstances of the murder.  Witnesses familiar with defendant's voice identified her voice as the female voice singing the rap song, and other witnesses testified with respect to the cassette tape, a digitally enhanced compact disc recording of the rap song, and a transcript of the rap song's lyrics.  Those three items thereafter were admitted in evidence.

Defendant contends in her main brief that County Court erred in allowing testimony of uncharged bad acts from two witnesses.  We reject that contention.  We note that only one of the two witnesses testified to an uncharged bad act, i.e., that, in the weeks prior to the victim's death, the witness had observed defendant confront the victim with a small handgun and threaten to kill him because he owed her money.  We conclude that the court properly admitted that testimony because it was relevant to establish defendant's motive and intent, and the court properly determined that the prejudicial effect of the evidence does not outweigh its probative value (see People v Mosley, 55 AD3d 1371, 1372, lv denied 11 NY3d 856; People v Dilbert, 1 AD3d 967, 967, lv denied 1 NY3d 626; see generally People v Ventimiglia, 52 NY2d 350, 359).  Contrary to defendant's contention, the other witness did not give any testimony concerning uncharged bad acts; rather, her testimony concerned her familiarity with defendant's voice and the identification of defendant's voice on the recording of the rap song.

Defendant further contends in her main brief that the court erred in admitting the cassette tape in evidence inasmuch as the person rapping on the cassette tape had not been clearly identified.  That contention is not preserved for our review inasmuch as defendant failed to object to the admission of the cassette tape in evidence on that ground (see CPL 470.05 [2]).

Defendant contends in her pro se supplemental brief that the rap song was admitted in evidence without a proper evidentiary foundation.  We reject that contention.  In addition to the four witnesses who identified defendant's voice, the backseat passenger testified that he recorded the background music for the rap song up to a year before the victim's death.  Police witnesses gave testimony with respect to the chain of custody of the cassette tape, and a sound engineer/acoustics expert opined that, within a reasonable degree of scientific certainty, the cassette tape was recorded only once and had not been altered.  To the extent that defendant contends that there was a gap in the chain of custody of the cassette tape, such gaps go to the weight of the evidence and not to its admissibility (see People v

*Hawkins*, 11 NY3d 484, 494; *People v McGee*, 49 NY2d 48, 60, *cert denied* 446 US 942; *cf. People v Ely*, 68 NY2d 520, 527-528). Consequently, the court did not err in determining that the evidentiary foundation of the cassette tape was adequate. Although there was no evidence conclusively establishing when defendant recorded the rap song, we conclude that the cassette tape was nevertheless admissible inasmuch as "[t]he lyrics of the song describe a murder occurring under similar circumstances as those present in the instant case" (*People v Wallace*, 59 AD3d 1069, 1070, *lv denied* 12 NY3d 861). We reject defendant's related contention in her main brief that the alleged error in admitting the cassette tape in evidence was compounded by the admission in evidence of the transcript of the lyrics. We conclude that the court properly exercised its discretion in permitting the use of the transcript of the rap song as an aid to the jury (*see People v Knight*, 280 AD2d 937, 939, *lv denied* 96 NY2d 864). Even assuming, arguendo, that the court erred in admitting the rap song and a transcript of its lyrics in evidence, we conclude that the error is harmless inasmuch as the evidence of defendant's guilt is overwhelming, and there is no significant probability that defendant otherwise would have been acquitted (*see generally People v Crimmins*, 36 NY2d 230, 241-242; *People v Wachtel*, 124 AD2d 613, 615, *lv denied* 69 NY2d 835).

Defendant contends in her main brief that the evidence is legally insufficient to support the conviction. That contention is preserved for our review only to the extent that she contends that the testimony of the backseat passenger was incredible as a matter of law, that the evidence failed to connect her to the victim's death, and that there was insufficient forensic evidence at the murder scene and in defendant's car (*see People v Gray*, 86 NY2d 10, 19; *People v Gaston*, 104 AD3d 1206, 1207). We reject defendant's contention that the backseat passenger's testimony was incredible as a matter of law. It cannot be said that his testimony was " 'manifestly untrue, physically impossible, contrary to experience, or self-contradictory' " (*Gaston*, 104 AD3d at 1207), and we decline to disturb the jury's credibility determinations with respect to that testimony (*see People v Aikey*, 94 AD3d 1485, 1486, *lv denied* 19 NY3d 956). We also reject defendant's claims that the evidence failed to connect her to the victim's death and that there was insufficient forensic evidence at the murder scene and in her car. Rather, viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621), we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and . . . as a matter of law satisfy the proof and burden requirements for every element of [murder in the second degree]" as a principal or an accomplice (*People v Bleakley*, 69 NY2d 490, 495).

Viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention in her main brief that the verdict is against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Defendant contends in her main brief that the prosecutor's opening statement was insufficient because the prosecutor failed to address the issue of liability and accountability pursuant to Penal Law § 20.00.  We reject that contention.  "There is no distinction between liability as a principal and criminal culpability as an accessory and the status for which the defendant is convicted has no bearing upon the theory of the prosecution" (*People v Duncan*, 46 NY2d 74, 79-80, *rearg denied* 46 NY2d 940, *cert denied* 442 US 910).  Whether defendant was the actual perpetrator of the crime or liable as an accessory is therefore irrelevant, and we conclude that the prosecutor's opening statement "was sufficient to apprise the jury of the nature of the case" (*People v Nuffer*, 70 AD3d 1299, 1300).

Contrary to defendant's contention in her main and pro se supplemental briefs that she was denied her right to a fair trial when the prosecutor told prospective jurors that a codefendant had been acquitted, we conclude that the court's "inquiry and instructions were sufficient to cure any potential prejudice and to ensure defendant's right to a fair trial" (*People v Chavys*, 263 AD2d 964, 964, *lv denied* 94 NY2d 821).  The court therefore did not abuse its discretion in denying defendant's motion for a mistrial premised on the prosecutor's comment (*see People v Wilson*, 78 AD3d 1213, 1214, *lv denied* 16 NY3d 747).

Defendant's contention in her pro se supplemental brief that defense counsel was ineffective "is based in large part upon facts that are outside the record and thus [is] not subject to review on direct appeal" (*People v Bennett*, 277 AD2d 1008, 1008, *lv denied* 96 NY2d 780).

We have reviewed defendant's remaining contentions in her main and pro se supplemental briefs and conclude that none warrants reversal or modification of the judgment of conviction.

Entered:  March 21, 2014                    Frances E. Cafarell
                                            Clerk of the Court