People v Horton (2020 NY Slip Op 01530)





People v Horton


2020 NY Slip Op 01530


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

110708

[*1]The People of the State of New York, Respondent,
v
Jeffrey L. Horton, Appellant.

Calendar Date: January 9, 2020

Before: Garry, P.J., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Danielle Neroni Reilly, Albany, for appellant.
Matthew Van Houten, District Attorney, Albany (Andrew J. Bonavia of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Cassidy, J.), rendered November 9, 2018 in Tompkins County, upon a verdict convicting defendant of the crimes of burglary in the first degree, rape in the first degree, criminal sexual act in the first degree, aggravated sexual abuse in the third degree, sexual abuse in the first degree, assault in the third degree, stalking in the third degree, stalking in the fourth degree and menacing in the third degree.
In March 2015, defendant entered the victim's home and subjected her to physical and sexual assaults. He was tried by a jury and convicted of multiple felonies. Upon his appeal, this Court reversed and remitted the matter for a new trial (162 AD3d 1118 [2018]). Following a second jury trial, defendant was convicted of burglary in the first degree, rape in the first degree, criminal sexual act in the first degree, aggravated sexual abuse in the third degree, sexual abuse in the first degree, assault in the third degree, stalking in the third degree, stalking in the fourth degree and menacing in the third degree. Supreme Court sentenced defendant to consecutive prison terms of five years on the conviction for burglary in the first degree, with five years of postrelease supervision, and seven years on the conviction for rape in the first degree, with five years of postrelease supervision, and to lesser concurrent terms on the remaining convictions. Defendant appeals.
Defendant asserts that his burglary and assault convictions are against the weight of the evidence because the People failed to prove that the victim sustained the requisite physical injury, and that his sex offense convictions are against the weight of the evidence because the victim's testimony was not credible. The victim testified that she had ended a romantic relationship with defendant shortly before the attack. In the next several days, defendant called her repeatedly, sent her multiple text messages and appeared at her workplace and in her home, disregarding her repeated requests to leave her alone. The victim stated that, on the night of the attack, she awoke to find defendant in her bedroom. When she asked what he was doing there, he said that he had entered through a dog door in the attached garage and that she should have locked all of her doors. He said that he had just wanted to talk to her, complained that she had not answered his messages, warned her that he had taken two Viagra pills on the way over and said that she was "gonna get it." The victim testified that defendant jumped on top of her, hit her repeatedly in the face and head and tied her wrists together behind her back with a nylon rope that had been stored in her laundry room. Thereafter, despite the victim's protests, he penetrated her vaginally and anally with a vibrator and with his penis, while threatening to kill her if she tried to fight back. Afterward, according to the victim, defendant noticed that her face was red and swollen. He became upset, paced back and forth talking about how to "get out of this," mentioned killing himself, and finally asked the victim if she would agree to tell no one about the sexual assault if he turned himself in for the physical assault. He untied her and left, saying that he was going to the police station.
The victim testified that she had not authorized defendant to enter her home and did not consent to any part of the sexual assault. She reported the physical assault to police immediately after the attack and was treated at the emergency room for her physical injuries. However, she did not report the sexual assault until a day later. She then gave a second statement to police and was examined by a sexual assault nurse examiner. The victim said that, after the attack, she experienced dizziness, headaches, soreness and pain all over her body. Police officers and medical personnel testified that she had significant bruising and swelling on her face, head and other parts of her body, a bite mark on one finger and ligature marks on one wrist. Photographs depicting these injuries were admitted. Her treating physician testified that she diagnosed the victim with postconcussion syndrome, with symptoms of dizziness, sensitivity to light, headaches and impaired concentration. The victim was prescribed several medications, including a painkiller, and was unable to return to work for more than a month.
Defendant did not testify, but his testimony from the prior trial was admitted into evidence. In that testimony, he acknowledged that he had entered the victim's home without permission, claiming that he had used an unlocked back door. He asserted that, when he first appeared in the bedroom, he and the victim had a calm conversation about the end of their relationship, but that the victim suddenly hit him in the mouth when he made a comment that upset her. He stated that he "reacted" by backhanding her, straddling her and then "slapp[ing]" her in the head and face for 10 or 15 seconds. He stated that he pinned her down on the bed, but denied that he tied her wrists. According to defendant, he then attempted to leave, but the victim invited him to stay and have sex with her, which he did. Thereafter, he left, turned himself in to the police and gave a statement in which he admitted that he had "punched or slapped" the victim. A subsequent search of his cell phone revealed that he conducted Internet searches for information on state laws regarding assault, battery and sodomy, and sent a text message to his sister directing her not to tell anyone that he and the victim had "made love" because he could be charged with rape.
If the jury had credited defendant's assertions that the victim consented to sexual activity with defendant and that her injuries were less severe than she claimed, a different verdict would not have been unreasonable. Thus, this Court must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine whether the trier of fact accorded proper weight to the evidence" (People v Cooley, 149 AD3d 1268, 1269 [2017] [internal quotation marks and citation omitted], lvs denied 30 NY3d 979, 981 [2017]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "The conflicting testimony . . . presented 'a classic he-said she-said credibility determination' for the jury to resolve" (People v Kiah, 156 AD3d 1054, 1056 [2017], lvs denied 31 NY3d 981, 984 [2018], quoting People v McCray, 102 AD3d 1000, 1000 [2013], affd 23 NY3d 193 [2014]). Deferring to that determination and viewing the evidence in a neutral light, we find that the challenged convictions are not against the weight of the evidence (see People v Horton, 162 AD3d at 1119-1120; People v Hines, 9 AD3d 507, 511 [2004], lv denied 3 NY3d 707 [2004]).
Supreme Court properly denied defendant's motion in limine seeking to preclude the People from eliciting testimony that the victim took measures to improve the security of her home after the attack. Contrary to defendant's claim, this testimony did not constitute bolstering of any kind (compare People v Smith, 22 NY3d 462, 465-466 [2013]; People v Holt, 67 NY2d 819, 821 [1986]). The court likewise properly denied defendant's request for records of the victim's mental health counseling and her purported history of substance abuse. When a witness has a history of treatment for a diagnosed mental health condition, in camera review may be warranted "to determine whether [mental health records] contain relevant and material information bearing on the credibility of the witness that ought to be disclosed to the defendant" (People v Kiah, 156 AD3d at 1057). However, such confidential records are not released "where sought as a fishing expedition searching for some means of attacking the victim's credibility" (People v McCray, 102 AD3d at 1005 [internal quotation marks and citation omitted]; see People v Bowman, 139 AD3d 1251, 1253 [2016], lv denied 28 NY3d 927 [2016]). Here, defense counsel's speculative assertion that the victim had a drinking problem based upon her history of a single alcohol-related driving infraction, counsel's unspecified investigation of the matter and vague witness testimony about occasions when the victim was allegedly intoxicated did not constitute the requisite "factual predicate which would make it reasonably likely that the file [would] bear such fruit" (People v Gissendanner, 48 NY2d 543, 550 [1979]). Likewise, the victim's prior testimony that she had seen a free counselor at an advocacy center a few times after the incident and had "sought out a specialist, therapist for" what she described as "post-traumatic syndrome," without more, did not establish a reasonable likelihood that anything in her counseling records would bear on her credibility (see People v Mirabella, 126 AD3d 1367, 1368-1369 [2015], lv denied 25 NY3d 1168 [2015]; People v Drake, 19 AD3d 209, 210 [2005], affd 7 NY3d 28 [2006]).
In another motion in limine, defense counsel sought to preclude references to the "victim," arguing that they would dilute the presumption of innocence and deprive defendant of a fair trial. Several New York courts have examined this issue in the specific context of jury instructions and have held that it is improper for a trial court to refer to a complainant as the "victim" in a jury charge, but that reversal is not required unless, taken as a whole, the charge does not otherwise convey the proper standards to the jury (see People v Davis, 73 AD2d 693, 694 [1979]; compare People v Carpenter, 52 AD3d 1050, 1051 [2008], lv denied 11 NY3d 735 [2008], cert denied 556 US 1131 [2009]; People v Johnson, 140 AD2d 954, 954 [1988], lv denied 72 NY2d 920 [1988]; see also People v Brewington, 145 AD2d 962, 963 [1988], lv denied 74 NY2d 661 [1989]). It does not appear that any New York court has analyzed the issue outside the context of jury instructions, but several courts in other jurisdictions have held that the use of the term "victim" by the prosecution or its witnesses should be avoided where, as here, the credibility of the complaining witness is in issue, and that facts such as the context and frequency of the references and the strength of other evidence should be taken into account in determining whether use of the term is reversible error (see e.g. State v Mundon, 129 Haw 1, 25-26, 292 P3d 205, 229-230 [2012]; State v Devey, 2006 UT App 219, ___, 138 P3d 90, 95-96 [2006]; State v Wigg, 179 VT 65, 69-71, 889 A2d 233, 236-238 [2005]; Jackson v State, 600 A2d 21, 24-25 [Del Sup Ct 1991]; cf. Friday v State, 2018 Ark 339, ___, 561 SW3d 318, 323 [2018]). Here, although Supreme Court denied defendant's application, it also agreed that his concern was "well-grounded" and warned counsel to use caution, stating that "[i]t might call the attorneys over" if a witness repeatedly used terms like "victim" or "assailant," and that police witnesses should not use such terms in such a way as to have an emotional impact on the jury. While we agree with defendant that references to the complaining witness as the "victim" at trial should be avoided when his or her credibility is in issue, we find no error in the court's treatment of the issue under the circumstances presented here.[FN1]
Supreme Court properly denied defendant's pretrial motion to compel the People to turn over the victim's cell phone based upon an agreement that he alleged had been reached before defendant's first trial, by which the People would preserve the phone in exchange for defendant's waiver of a preliminary hearing.[FN2] Defendant supported the existence of the claimed agreement by submitting a March 2015 letter in which his former counsel represented in Town Court that the People had agreed to join in a motion to preserve "certain short message service (sms) evidence" through a temporary restraining order.[FN3] Notably, this letter neither mentions the victim's cell phone nor specifies that the messages to be preserved were the victim's, and defendant's preliminary hearing waiver provides only that the People agreed to provide "any discovery that would be available pursuant to [CPL article 240]." Defendant's former counsel submitted an affidavit stating that it was his "understanding" that the agreement included the preservation of the victim's phone for his inspection. However, the Court of Appeals has held in another context that a trial court "must be entitled to rely on the record to ascertain whether any promises, representations, implications and the like were made to the defendant" (People v Frederick, 45 NY2d 520, 525 [1978]). Here, in the absence of any contemporaneous evidence that there was an agreement pertaining to the victim's phone, we agree with Supreme Court that defendant did not prove its existence.
Contrary to defendant's argument, Supreme Court properly denied his motion to strike the People's amended bill of particulars. Defendant had filed a demand for a bill of particulars before the first trial seeking, among other things, the alleged method and means by which he had entered the victim's home; the People had responded that defendant had entered through a dog door in the garage. At the first trial, defendant instead testified that he entered through an unlocked back door. Several days before the second trial, the People filed an amended bill of particulars modifying their previous response, averring that they had no obligation to provide proof of how they intended to prove an element of an offense. Defendant moved to strike the amended bill of particulars on the ground that the People should be held to their prior theory of prosecution. In denying the motion, Supreme Court found that defendant had admitted that he entered the home without permission, that he was aware that the People no longer intended to prove that he had used the dog door to do so, and that the amendment did not change the theory of the case or cause any prejudice.
By statute, the People are free to file an amended bill of particulars at any time before a defendant's trial (see CPL 200.95 [8]). Nevertheless, defendant argues that the amendment here was impermissible because it constructively amended the indictment in violation of CPL 200.70 (2), which provides that "[a]n indictment may not be amended in any respect which changes the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed it." However, "[i]t is well settled that the prosecution need not prove allegations in an indictment that are extraneous to the material elements of the offense charged" (People v Osinowo, 28 AD3d 1011, 1013 [2006] [internal quotation marks and citation omitted], lv denied 7 NY3d 792 [2006]; see People v Rooney, 57 NY2d 822, 823 [1982]; People v Hilliard, 49 AD3d 910, 913 [2008], lv denied 10 NY3d 959 [2008]). Burglary in the first degree requires proof that a defendant "knowingly enter[ed] or remain[ed] unlawfully in a dwelling" (Penal Law § 140.30), but the statute does not provide that the method of entry is a material element of the offense, nor has defendant identified any case law precedent to that effect. Thus, the amendment with respect to this issue did not alter the theory of the prosecution (compare People v Grega, 72 NY2d 489, 498 [1988]; People v Johnson, 227 AD2d 927, 927-928 [1996], lv denied 88 NY2d 1022 [1996]). Moreover, as it was defendant's testimony in the first trial that created the factual discrepancy between the proof and the initial bill of particulars, he cannot be heard to complain that either the indictment or the amended bill of particulars failed to "fulfill[] the statutory and constitutional requirements of due process and fair notice" (People v Spann, 56 NY2d 469, 473 [1982]; see People v Feldman, 50 NY2d 500, 504 [1980]; see also People v Griffin, 9 AD3d 841, 842-843 [2004]).
During the trial, a police investigator testified that he had used Cellebrite software to examine the contents of defendant's cell phone and had prepared an extraction report listing, among other things, approximately 2,600 text messages. The People introduced 115 of these messages into evidence, exchanged by defendant and the victim between March 20, 2015 and March 24, 2015, as well as the previously-mentioned text message from defendant to his sister. Defendant then sought to introduce three additional text messages from the extraction report — another message to his sister, sent on March 26, 2015, one sent to a third party on March 25, 2015, and one sent to the victim on March 16, 2015. The People objected on hearsay and relevancy grounds, while defendant argued that all of the messages in the extraction report, including these three messages, were admissible under the rule of completeness. We find no error in Supreme Court's refusal to admit the messages.
The rule of completeness provides that a defendant is entitled to have the entirety of an admission, statement or recorded conversation, including both inculpatory and exculpatory portions, admitted into evidence, in order to prevent the distortion that may result from admitting part of a statement out of context (see People v Dlugash, 41 NY2d 725, 736 [1977]; People v Gallo, 12 NY2d 12, 15 [1962]). The rule may be applied to text messages in appropriate circumstances (see People v Saylor, 173 AD3d 1489, 1491 n 2 [2019]; People v Cartagena, 170 AD3d 451, 452 [2019], lv denied 33 NY3d 1029 [2019]). However, the rule does not mandate the admission of a text message simply because other text messages from the same phone, sent on different dates and dealing with different subjects, were admitted into evidence. Here, the text messages that defendant sought to admit were not part of any of the text exchanges that were admitted into evidence, were made outside the time frame of the admitted messages, and were not explanatory or exculpatory of anything in the admitted communications. Accordingly, the rule of completeness did not require their admission (see State v Savage, 301 Neb 873, 888-889, 920 NW2d 692, 705-706 [2018], mod on rearg 302 Neb 492, 924 NW2d 64 [2019]).
Supreme Court did not abuse its discretion in declining to grant an adjournment to permit defendant to call a witness. The victim testified during her direct examination that the rope that defendant used to tie her wrists during the attack had been given to her by her veterinarian for use as a temporary leash. On cross-examination, defense counsel asked for the veterinarian's name. The victim stated that she "believe[d]" that she had been given the rope at a certain veterinary practice in the Town of Dryden, Tompkins County, but that she did not know the veterinarian's name, as there were multiple veterinarians at that practice. Several days later, defense counsel sought a one-day adjournment to secure the testimony of a veterinarian who was allegedly the veterinarian mentioned by the victim, and who would allegedly testify that he had no record of having treated the victim's dog in his practice.[FN4] Supreme Court denied the adjournment, finding — based upon its own research — that there was no veterinary practice in Dryden with the name provided by the victim and that, because the victim had expressed doubt about the identity of the veterinarian who had provided the rope, her credibility could not be impeached by the testimony of any particular veterinarian.
We agree with defendant that Supreme Court should not have assumed the role of counsel by initiating its own investigation into the facts and, further, to the extent that the court took judicial notice of the information it discovered, it should have given the parties an opportunity to be heard on the propriety of doing so (see Jerome Prince, Richardson on Evidence, § 2-202 [Farrell 11th ed 1995]). Nevertheless, even without the information gathered by the court, defendant's contention is unavailing. When a defendant seeks an adjournment so that a potential witness can be produced, it is "incumbent upon the defendant to demonstrate, among other things, that the witness would furnish testimony that is both material and favorable to the defense" (People v Booker, 141 AD3d 834, 835 [2016] [internal quotation marks, brackets and citation omitted], lv denied 28 NY3d 1026 [2016]; see People v Hartman, 64 AD3d 1002, 1003 [2009], lv denied 13 NY3d 860 [2009]). Here, defendant did not establish that the proposed collateral testimony would be material or relevant. The victim had testified that there were multiple veterinarians at the practice, but the veterinarian that defendant sought to call was the only veterinarian in his practice — a practice with a name only somewhat similar to that given by the victim. Defendant thus failed to establish that the veterinarian it sought to call was the same person whom the victim had identified or that his testimony would be material or relevant, and the court acted within its "sound discretion" in denying the adjournment (People v Diggins, 11 NY3d 518, 524 [2008] [internal quotation marks and citation omitted]; see People v Booker, 141 AD3d at 835).
Many of the errors that defendant now asserts took place at trial were not preserved for appellate review by appropriate objections. For example, defendant now argues that Supreme Court improperly permitted the jury to view digital photographs of the victim's injuries during its deliberations because only printed versions of the photographs, and not the digital versions, were admitted into evidence. At trial, however, defense counsel objected only to the printed photographs on the ground that they were "blurry," and agreed to the People's proposal to resolve his objection by publishing the photographs to the jury in digital form on a high-definition television screen, while admitting the printed images.[FN5]
Defendant's objections to the jury charge are likewise unpreserved (see generally People v Rice, 172 AD3d 1616, 1619 [2019]). Although defendant now contends that Supreme Court's correction of an erroneous instruction was confusing and that a supplemental instruction given in response to a jury note had the effect of shifting the burden of proof, defense counsel expressly agreed to both instructions at trial after conferring on their content with the court and the prosecutor. Likewise, defendant did not object at trial to Supreme Court's instruction on forcible compulsion. He thus failed to preserve his appellate contention that the court erred in instructing the jury on both definitions of forcible compulsion — physical force and express or implied threats — because, in defendant's view, the indictment charged only physical force (see People v McChesney, 160 AD2d 1045, 1045-1046 [1990]).[FN6] To the extent that defendant contends that this failure constituted the ineffective assistance of counsel, we would have found no merit in this argument if defense counsel had made an appropriate objection. When the amended bill of particulars and the cross-referenced indictment and summary of facts are read as a whole, both theories of forcible compulsion are fully presented (see id. at 1046).
Defendant likewise failed to preserve his appellate argument that the indictment counts alleging forcible compulsion are duplicitous because they do not state whether the alleged forcible compulsion consisted of physical force or threats (see People v Becoats, 17 NY3d 643, 650-651 [2011], cert denied 566 US 964 [2012]). Defense counsel's failure to preserve this issue did not constitute ineffective assistance; there was no duplicity, as the Penal Law provides that the element of forcible compulsion may be proven by either physical force or by express or implied threats and does not establish separate offenses for these alternate forms of proof (see Penal Law §§ 130.00 [8] [a], [b]; 130.35 [1]; 130.50 [1]; 130.65 [1]; 130.66 [1] [a]; compare CPL 200.30 [2]; see generally People v Caban, 5 NY3d 143, 152 [2005]).
Defendant's claim that he was deprived of a fair trial by various acts of prosecutorial misconduct was not preserved by timely, specific objections (see People v Fragassi, 178 AD3d 1153, 1156-1157 [2019], lv denied ___ NY3d ___ [Jan. 28, 2020]; People v Sostre, 172 AD3d 1623, 1626-1627 [2019], lv denied 34 NY3d 938 [2019]), but we will examine this assertion as defendant relies on this failure as one of the bases for his ineffective assistance claim. The prosecutor did not, as defendant claims, commit misconduct during jury selection. All of the challenged remarks by the prosecutor during voir dire, read in context, are accurate statements of the law or corrections of defense counsel's misstatements, and the challenged questions "were appropriately directed at determining the prospective jurors' views on . . . issues likely to be presented at trial" (People v Guay, 72 AD3d 1201, 1203 [2010], affd 18 NY3d 16 [2011]). Remarks in the prosecutor's opening statement about defendant's conflicting descriptions of the manner of his entry into the victim's house did not denigrate the defense, but instead accurately stated the law. The record does not support defendant's claims that, during the People's case-in-chief, the prosecutor asked impermissible bolstering questions or elicited improper details in violation of this Court's direction on the prior appeal (162 AD3d at 1121). As for the summation, the vast majority of the remarks that defendant now challenges were fair comments on the evidence or fair responses to the extended attacks on the victim's credibility in defense counsel's summation (see People v Nunes, 168 AD3d 1187, 1193 [2019], lv denied 33 NY3d 979 [2019]; People v Shamsuddin, 167 AD3d 1334, 1336 [2018], lv denied 33 NY3d 953 [2019]). To the extent that a handful of the prosecutor's remarks may have exceeded the "wide latitude" extended to the prosecution in responding to the defense summation (People v Casanova, 119 AD3d 976, 977 [2014]), "these isolated comments did not rise to the flagrant and pervasive level of misconduct which would deprive defendant of due process or a fair trial" (People v Harris, 162 AD3d 1240, 1244 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 937 [2018]; see People v Terry, 85 AD3d 1485, 1487-1488 [2011], lv denied 17 NY3d 862 [2011]). As the prosecutor's conduct was not improper, defense counsel's failure to object did not constitute the ineffective assistance of counsel (see People v Stanford, 130 AD3d 1306, 1309 [2015], lv denied 26 NY3d 1043 [2015]; People v Thomas, 105 AD3d 1068, 1071-1072 [2013], lv denied 21 NY3d 1010 [2013]).
As for defendant's claim that his counsel improperly failed to object to the admission of his testimony from the former trial, "[t]o succeed on a claim of ineffective assistance of counsel, the defendant must show the absence of strategic or other legitimate explanations for counsel's failure" (People v Houze, 177 AD3d 1184, 1189 [2019] [internal quotation marks and citation omitted]). Even assuming without deciding that — as defendant now contends — his testimony in the prior trial was inadmissible because it was impelled by the People's improper use of his pretrial silence (see Harrison v United States, 392 US 219, 222-224 [1968]; People v Horton, 162 AD3d at 1121; People v Spencer, 219 AD2d 259, 262-263 [1996], lv denied 88 NY2d 1024 [1996]), his trial counsel could reasonably have elected not to oppose its admission for strategic reasons. Although defendant now contends that his prior testimony included damaging admissions that he entered the victim's home unlawfully, assaulted the victim and had sexual intercourse with her, defendant had made similar admissions on the first two points to police and would have faced impeachment had he testified differently in the second trial. His counsel could have made the strategic decision that it would be less damaging to permit the admission of known, controlled prior testimony — read into evidence by a prosecutor rather than by defendant himself — than to risk the unknown consequences of putting defendant on the stand for a second time.
Defendant's claim that his counsel had no recognizable strategy during jury selection is likewise without merit. "[J]ury selection involves the quintessentially tactical decision of whether defendant's interests would be assisted or harmed by a particular juror" (People v Molano, 70 AD3d 1172, 1176 [2010] [internal quotation marks and citation omitted], lv denied 15 NY3d 776 [2010]; accord People v Dashnaw, 116 AD3d 1222, 1230 [2014], lv denied 23 NY3d 1019 [2014]). Defendant challenges defendant's failure to use peremptory challenges to excuse three prospective jurors who had personal experience with domestic violence or sexual assault after his challenges for cause were denied. However, in each case, the prospective jurors stated unequivocally that they could be fair and impartial, and defense counsel could reasonably have made the strategic decision to conserve limited remaining peremptory challenges for prospective jurors whose impartiality was less certain. Notably, defense counsel challenged for cause or consented to the People's challenges to many other prospective jurors on the panel who stated that they could not be fair and impartial because of comparable personal experiences.
Defendant next alleges that his counsel failed to object to several instances of alleged improper testimony. Only one of these alleged failures was addressed in detail in his brief; defendant contends that defense counsel improperly failed to object when the prosecutor violated the best evidence rule (see generally Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643 [1994]) by allegedly asking the investigating police officer what a video recording of his interview with the victim would show regarding whether the officer could see a ligature mark on her wrist. Defense counsel's failure to object to this testimony did not constitute ineffective assistance, as examination of the testimony in question reveals that the prosecutor was not asking the investigator about the contents of the video recording, but about his own observations of the victim's wrist. Defense counsel's failure to object to certain alleged hearsay testimony did not rise to the level of ineffective assistance, as the testimony was cumulative and the issues not in dispute (see People v Singh, 16 AD3d 974, 977 [2005], lv denied 5 NY3d 769 [2005]), and we find no merit in defendant's remaining claims of alleged improper testimony. As for defendant's claim that his counsel's summation was ineffective and prejudicial, it was reasonable trial strategy for defense counsel to concede that the evidence established defendant's guilt as to certain lesser crimes, while focusing his arguments on the credibility issues related to the more serious charges (see People v Reyes, 84 AD3d 426, 426-427 [2011], lv denied 18 NY3d 927 [2012]). We find no merit in defendant's remaining allegations of ineffective assistance. Defense counsel engaged in extensive motion practice before and after the trial, thoroughly cross-examined the People's witnesses, presented witnesses on defendant's behalf, pursued a coherent theory of defense and provided defendant with zealous and meaningful representation (see People v Benevento, 91 NY2d 708, 714-715 [1998]).
Mulvey, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Significantly, defendant does not argue that he was, in fact, deprived of a fair trial by any specific use of the term "victim." Our review reveals that the victim was almost never referred to by that term during the trial. Supreme Court used the victim's name or called her the "alleged victim," and the prosecutor and the People's witnesses used her name in almost every instance; the few exceptions were so minimal in the context of the trial as a whole that we perceive no possibility that the presumption of innocence was undermined or that defendant was deprived of a fair trial.

Footnote 2: Defendant's brief asserts that the motion sought access to "text messages from the [victim's] phone," but, in fact, the motion sought access to the phone itself.

Footnote 3: The People assert that they turned over to defendant more than 2,000 text messages from his phone, many of which were messages between the victim and defendant. The record does not reveal whether these messages were turned over pursuant to the alleged March 2015 agreement.

Footnote 4: Defense counsel asserted that he had not been able to contact the veterinarian immediately after the victim's testimony because the trial had kept him too busy during business hours.

Footnote 5: This argument verges closely on frivolity. Beyond the fact that defense counsel agreed to the submission, there is no argument that he was ineffective for making this agreement, no authority cited for the proposition that photographs admitted in printed form cannot be viewed by the jury in digital form, and no assertion of any resulting prejudice.

Footnote 6: Defense counsel did raise an unsuccessful objection to the forcible compulsion instruction on a different ground, arguing that the instruction should be limited to one specific form of physical compulsion — that is, defendant's use of the rope.