People v Smith (2021 NY Slip Op 02564)





People v Smith


2021 NY Slip Op 02564


Decided on April 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 29, 2021

109807
[*1]The People of the State of New York, Respondent,
v
Karim Smith, Appellant.

Calendar Date:March 9, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Angela M. Kelley, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered September 12, 2017 in Schenectady County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts), assault in the second degree, reckless endangerment in the second degree and criminal possession of a weapon in the third degree.
Defendant was charged by indictment with criminal possession of a weapon in the second degree (two counts), attempted murder in the second degree, assault in the first degree (two counts) and reckless endangerment in the first degree stemming from a shooting that occurred in the afternoon of August 14, 2016 on Crane Street in the City of Schenectady, Schenectady County. Thereafter, defendant was charged by a separate indictment with criminal possession of a weapon in the third degree, stemming from the same incident. The two indictments were consolidated. Following a jury trial, defendant was convicted of two counts of criminal possession of a weapon in the second degree, one count each of assault in the second degree — as a lesser included offense of the second count of assault in the first degree — reckless endangerment in the second degree — as a lesser included offense of reckless endangerment in the first degree — and criminal possession of a weapon in the third degree. Supreme Court sentenced defendant, as a second felony offender, to concurrent prison terms of 12 years, to be followed by five years of postrelease supervision on each conviction of criminal possession of a weapon in the second degree and to lesser concurrent terms of incarceration on the remaining convictions. Defendant appeals.
Defendant contends that the evidence presented was legally insufficient and the verdict was against the weight of the evidence with respect to his conviction of assault in the second degree because the People failed to prove that the victim suffered a serious physical injury. Initially, defendant's legal sufficiency claim is unpreserved for review given that he failed to renew his motion to dismiss at the close of all proof (see People v Rahaman, 189 AD3d 1709, 1710 [2020], lv denied 36 NY3d 1059 [2021]; People v Hilton, 166 AD3d 1316, 1317 [2018], lv denied 32 NY3d 1205 [2019]). "Nevertheless, as part of our weight of the evidence review, we must necessarily determine whether the elements of the charged crimes were proven at trial beyond a reasonable doubt" (People v Saunders, 176 AD3d 1384, 1385 [2019] [citations omitted], lv denied 35 NY3d 973 [2020]; see People v Meadows, 183 AD3d 1016, 1017 [2020], lv denied 35 NY3d 1047 [2020]). "Where, as here, a different outcome would not have been unreasonable, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Marshall, 162 AD3d 1110, 1111 [2018], lv denied 31 NY3d 1150 [2018] [internal quotation marks and citations omitted]). "'Serious [*2]physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]; see People v Marshall, 162 AD3d 1110, 1113 [2018], lv denied 31 NY3d 1150 [2018]).
At trial, the victim testified that he was with two friends at Chubby's, a convenience store on Crane Street, on the day of the incident. According to the victim, a fight broke out between defendant and James Watkins, one of the victim's friends, and that the victim had "jumped in" to assist Watkins; thereafter, "everybody started running" and, as the victim was running away, he was shot in the back of his right leg.[FN1] The victim asserted that the bullet entered through the back of the leg just below the kneecap and exited through the front of the leg just above the kneecap. The victim stated that after he was shot, he went to a friend's house for about 20 minutes before he was picked up and driven to the home of Watkin's girlfriend. The victim described the injury as a "burning sensation" and ranked his pain level at 5 to 6 out of 10. He testified that Watkins gave him some pain pills that helped the pain. The victim also described the blood as "trickling" from the wound. Because of the pain pills, the victim could not estimate the amount of time that he spent at Watkins' girlfriend's house; at some point, he called his girlfriend and she took him back to her house until the police arrived. The victim also stated that the police took him to the hospital, where he was treated for two days before being discharged on crutches. The victim testified that he was on crutches for several months and then used a cane for several months more. The victim stated that he occasionally still has pain in his leg, for which he takes medication, and he has two circular scars from the bullet that are "[a]bout the size of a penny." As to whether he sustained any lasting nerve damage, the victim testified that his doctors had indicated that "it would take six months to a year for [his] leg to get fully healed." The victim did not participate in any physical therapy for his injury.
We agree with defendant that the verdict as to his conviction for assault in the second degree was against the weight of the evidence because "the evidence does not support a finding that the victim sustained a serious physical injury" (People v Marshall, 162 AD3d at 1113; see Penal Law § 120.05 [4]; People v Tucker, 91 AD3d 1030, 1031-1032 [2012], lv denied 19 NY3d 1002 [2012]). "Although the victim's injuries are by no means trivial, they fall short of constituting injuries that create a substantial risk of death. There was no evidence that the victim lost consciousness after being shot or that a vital organ was damaged. Nor was there any proof, lay or medical, indicating that the victim's injuries caused a substantial risk [*3]of death or were life threatening" (People v Marshall, 162 AD3d at 1113 [citations omitted]; see People v Alvarez, 38 AD3d 930, 934 [2007], lv denied 8 NY3d 981 [2007]). Similarly, the evidence failed to show "that the victim suffered from a protracted impairment of health or protracted loss or impairment of the function of a bodily organ" (People v Marshall, 162 AD3d at 1113; see People v Stewart, 18 NY3d 831, 832 [2011]). Although there was testimony regarding the long-term effects of the gunshot wound, no corresponding medical documentation was submitted as proof of the link between the impairment and the initial injury (see People v Stewart, 18 NY3d at 832; People v Tucker, 91 AD3d at 1032; compare People v Rice, 90 AD3d 1237, 1238 [2011]).[FN2] Further, although the victim testified that he had two circular scars from the bullet, this testimony alone is not sufficient to support a finding of serious disfigurement (see People v Marshall, 162 AD3d at 1114; People v McKinnon, 15 NY3d 311, 316 [2010]). To prove that the victim's scars were a serious disfigurement would have required the People to make a record of it, via either a photograph or a detailed description; here, however, the testimony establishes "no more than that the victim had two scars" (People v McKinnon, 15 NY3d at 316 [2010]).
Although the evidence "falls short of satisfying the statutory definition of serious 'physical injury'" (People v Phillip, 279 AD2d 802, 803 [2001], lv denied 96 NY2d 905 [2001]; see People v Ham, 67 AD3d 1038, 1040 [2009]), there is no dispute that the victim sustained a "physical injury" (Penal Law § 10.00 [9]). Therefore, we reduce defendant's conviction of assault in the second degree under count 6 of the indictment to the lesser included offense of assault in the third degree, vacate the sentence imposed on said conviction and remit the matter to Supreme Court for resentencing thereon (see Penal Law § 120.00 [2]; People v Trombley, 97 AD3d 903, 903-904 [2012]; cf. People v Harris, 186 AD3d 907, 912 [2020]).
Defendant next asserts that County Court (Eidens, J.H.O.) erred in denying his motion to suppress his statements made to police because the detective who questioned him engaged in improper interrogation prior to administering Miranda warnings. At a Huntley hearing, the People have "the burden of proving beyond a reasonable doubt that [the] defendant's statement[s] to police [were] voluntarily given" and that "any custodial interrogation was preceded by the administration and [the] defendant's knowing waiver of his [or her] Miranda rights" (People v Steigler, 152 AD3d 1083, 1083 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 983 [2017]; see People v Newell, 148 AD3d 1216, 1218 [2017], lv denied 29 NY3d 1035 [2017]). To determine whether a defendant's statements were voluntary, the totality of the circumstances under which they were obtained should be examined (see People v Weaver, 167 AD3d 1238, 1241 [2018], lv denied [*4]33 NY3d 955 [2019]; People v Muller, 155 AD3d 1091, 1093 [2017], lv denied 30 NY3d 1118 [2018]). If the People meet their burden, then the defendant bears the burden of persuasion (see People v Steigler, 152 AD3d at 1083-1084; People v Newell, 148 AD3d at 1218).
At the Huntley hearing, the detective testified that, throughout the interview, defendant was "calm" and denied being under the influence of drugs or alcohol. The detective answered in the negative upon being asked if defendant ever requested that the questioning stop or for an attorney, but stated that defendant did request medical assistance for a gash on his chin. The detective testified that she promised him medical attention after their interview, that the gash was small and bleeding "a little bit" and that defendant did not state that he was in pain or that he was unable to focus due to the injury. With respect to defendant's Miranda rights, the detective testified that she read verbatim from the "Advice of Rights" preprinted form and that defendant was asked to communicate his understanding by initialing after each point. The detective further stated that defendant did, in fact, initial after each point, wrote "yes" in response to whether he understood the form and signed the form. The detective estimated that she interviewed defendant for approximately two hours. The detective recalled that, during the interview, defendant made a comment that he was "sitting here with no attorney present"; the detective testified that she then asked, "are you telling me that you want an attorney?" and that he "never said no" and "paused a little bit and then just continued talking." The detective stated that defendant requested to call a family member and that she provided him with his phone to do so.
Under these circumstances, County Court did not err in finding that the detective's testimony was credible and, relying on that testimony and video evidence of the interview, in concluding that defendant knowingly waived his Miranda rights and voluntarily spoke to the detective (see People v Butcher, 192 AD3d 1196, ___, 2021 NY Slip Op 01291, *1 [2021]; People v McMillan, 185 AD3d 1208, 1212 [2020], lv denied 35 NY3d 1112, 1114 [2020]). Defendant's statement during the interview that he was there without an attorney does not change this conclusion as this statement was not sufficient to constitute an unequivocal request for counsel (see People v Higgins, 124 AD3d 929, 931 [2015]; People v Engelhardt, 94 AD3d 1238, 1241 [2012], lv denied 19 NY3d 960 [2012]). Thus, County Court did not err in denying defendant's motion to suppress the video recording.
We are similarly unpersuaded by defendant's argument that Supreme Court committed reversible error by granting the People's challenge for cause to prospective juror No. 103. During voir dire, when the prosecutor asked prospective juror No. 103 whether she would be able to render a verdict of guilty, she responded that she did not think she [*5]could "do something like that." Upon further inquiry, prospective juror No. 103 stated that she would be able to find defendant guilty should the People prove their case with evidence. However, during further questioning, she vacillated continuously between these two positions. Significantly, when asked if she could promise that sympathy would not play a role in her deliberations, prospective juror No. 103 responded, "No, I couldn't promise that." Thereafter, having exhausted all of their peremptory challenges, the People lodged a challenge for cause to prospective juror No. 103 based upon the fact that "[s]he could not promise that her sympathy and concerns about the sentence would not factor into her deliberations." Defendant opposed the challenge, asserting that "she appropriately gauged the seriousness of this matter." Supreme Court granted the People's challenge for cause because prospective juror No. 103 "did not convince [the court] that she unequivocally would not allow sympathy to play a role in her deliberations" and that this meant she could not "follow the law." Indeed, "if there is any doubt about a prospective juror's impartiality, the trial court should err on the side of excusing the juror, since at worst the court will have replaced one impartial juror with another" (People v West, 166 AD3d 1080, 1082 [2018] [internal quotation marks, brackets and citations omitted]; see People v Johnson, 94 NY2d 600, 616 [2000]). Given that the juror "did not provide an unequivocal assurance of impartiality, [Supreme] Court properly granted the People's motion to strike her for cause pursuant to CPL 270.20 (1) (b)" (People v Cummings, 157 AD3d 982, 986 [2018] [internal quotation marks and citation omitted], lv denied 31 NY3d 982 [2018]; see People v Briskin, 125 AD3d 1113, 1118 [2015], lv denied 25 NY3d 1069 [2015]; compare People v Johnson, 150 AD3d 1390, 1392 [2017], lv denied 29 NY3d 1128 [2017]).
Defendant next asserts that he was denied a fair trial based upon a myriad of acts of prosecutorial misconduct. Although this assertion was not preserved by timely, specific objections at trial,[FN3] we will nevertheless examine this claim as defendant relies on his counsel's failure to object to the alleged misconduct as one of the bases for his ineffective assistance claim (see People v Horton, 181 AD3d 986, 996 [2020], lv denied 35 NY3d 1045 [2020]). First, defendant claims that the prosecutor committed misconduct during voir dire. However, the statements that defendant challenges were phrased generally and asked for the purpose of ensuring that certain factors would not influence the jurors (see generally id.). As to claimed misconduct during the opening and closing statements, after close examination, we find that the challenged statements "were fair comment on the evidence and the reasonable inferences to be drawn therefrom" (People v Williams, 163 AD3d 1160, 1165 [2018] [internal quotation marks and citation omitted], lvs denied 32 NY3d [*6]1170, 1179 [2019]). Defendant's contention that the prosecutor impermissibly shifted the burden during her opening statement and summation is belied by the record as "said comments did not serve to shift the burden of proof" (People v Shamsuddin, 167 AD3d 1334, 1336 [2018], lv denied 33 NY3d 953 [2019]). In contrast, in her opening, "the prosecutor was entitled to state the facts [she] expected to prove and the evidence [she] planned to introduce" (People v Colburn, 123 AD3d 1292, 1296 [2014] [internal quotation marks, brackets and citations omitted]). Likewise, "most of the challenged statements [in her summation] were responsive to defense counsel's . . . remarks in summation" (People v Williams, 163 AD3d at 1165; see People v Shamsuddin, 167 AD3d at 1336). Keeping in mind "the fleeting nature of the comments" (People v Story, 81 AD3d 1168, 1169 [2011]), "nothing in the [opening statement or] summation . . . was so prejudicial as to deny defendant's right to a fair trial" (People v Williams, 163 AD3d at 1165). Given that "the record as a whole 'fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial'" (People v Burns, 188 AD3d 1438, 1442 [2020], lvs denied 36 NY3d 1056, 1060 [2021], quoting People v Shamsuddin, 167 AD3d at 1336), trial counsel's failure to object does not amount to ineffective assistance of counsel (see People v Horton, 181 AD3d at 997; People v Williams, 35 NY3d at 45; People v Rose, 185 AD3d 1228, 1232 [2020], lv denied 35 NY3d 1115 [2020]).
Defendant's contention that Supreme Court erred by improperly shifting the burden of proof during jury selection and preliminary instructions and by improperly instructing the jury as to several aspects of the final jury charge is also unpreserved "as no objection was raised at trial" (People v Rivenburgh, 1 AD3d 696, 700 [2003], lv denied 1 NY3d 579 [2003]).[FN4] Were this argument properly before us, we would find it to be lacking in merit (see People v Beaudoin, 198 AD2d 610, 611 [1993], lv denied 82 NY2d 922 [1994]). Additionally, after the jury returned an inconsistent verdict, the court "properly directed the jury to continue to deliberate after . . . explain[ing] why it could not accept the jury's verdict" (People v Williams, 64 AD3d 734, 735-736 [2009], affd 16 NY3d 480 [2011]; see CPL 310.50 [2]).
Defendant also asserts that he did not receive meaningful representation at trial, alleging, in a conclusory fashion, a multitude of errors. "In order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted egregious and prejudicial error such that the defendant did not receive a fair trial. A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" ([*7]People v Stover, 178 AD3d 1138, 1147 [2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1163 [2020]; see People v Porter, 184 AD3d 1014, 1018 [2020], lv denied 35 NY3d 1069 [2020]).
With respect to defendant's contention that defense counsel failed to effectively conduct voir dire and purportedly failed to excuse a juror, "[j]ury selection involves [a] quintessentially tactical decision" (People v Horton, 181 AD3d at 997 [internal quotation marks, brackets and citations omitted]), and, as such, "defendant failed to show the absence of a strategic explanation for defense counsel's failure to challenge that prospective juror" (People v Brown, 169 AD3d 1488, 1490-1491 [2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1064 [2020]; see People v Thompson, 21 NY3d 555, 560 [2013]). As to defendant's contentions that counsel failed to effectively cross-examine several witnesses, "[s]peculation that a more vigorous cross-examination might have [elicited certain testimony or] undermined the credibility of a witness does not establish ineffectiveness of counsel" (People v Bassett, 55 AD3d 1434, 1438 [2008] [internal quotation marks, brackets and citation omitted], lv denied 11 NY3d 922; see People v Adams, 247 AD2d 819, 819 [1998], lvs denied 91 NY2d 1004, 1008 [1998]). Moreover, defendant failed to demonstrate "the absence of strategic or other legitimate explanations for counsel's [purported] failure[s]" (People v Horton, 181 AD3d at 997 [internal quotation marks and citations omitted]; see People v Moore, 185 AD3d 1544, 1545 [2020], lv denied 35 NY3d 1096 [2020]).
With respect to counsel's failure to object to improper testimony by witnesses, these "purported shortcomings involve matters of trial strategy and cannot be characterized as ineffective assistance of counsel" (People v Moore, 185 AD3d at 1545 [internal quotation marks, brackets and citation omitted]). As to defendant's contention that counsel failed to renew his motion to dismiss at the close of proof, thereby failing to preserve the argument of legal insufficiency, "the constitutional right to the effective assistance of counsel does not mean that the representation was error free in every respect, but simply that [the] defendant was afforded a fair trial" (People v Bjork, 105 AD3d 1258, 1263 [2013] [internal quotation marks, brackets and citations omitted], lv denied 21 NY3d 1040 [2013]). "Although defendant faults trial counsel for failing to renew the motion to dismiss at the close of the proof. . . th[is] asserted error[] — viewed in the context of counsel's overall representation — do[es] not rise to the level of ineffective assistance of counsel" (People v Bahr, 96 AD3d 1165, 1166-67 [2012], lv denied 19 NY3d 1024 [2012]; see People v Bjork, 105 AD3d at 1263). Based on the foregoing, given that "counsel filed an omnibus motion, familiarized himself with the relevant evidence, effectively cross-examined the People's [*8]witnesses at the Huntley hearing and at trial, advanced a cogent trial strategy, made relevant objections and made coherent opening and closing statements," defendant received meaningful representation (People v Durfey, 170 AD3d 1331, 1337 [2019], lv denied 34 NY3d 980 [2019]).
Finally, defendant failed to preserve his claim that the sentence imposed constituted a penalty for exercising his constitutional right to a jury trial (see People v Sostre, 172 AD3d 1623, 1627 [2019], lv denied 34 NY3d 938 [2019]; People v Williams, 163 AD3d at 1165). We also reject defendant's argument that his sentence — which was less than the maximum permissible term — was unduly harsh and excessive.[FN5] "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Sostre, 172 AD3d at 1628 [internal quotation marks and citations omitted]; see People v Gilmore, 177 AD3d 1029, 1029 [2019], lvs denied 35 NY3d 970 [2020]). Because we find neither extraordinary circumstances nor an abuse of discretion, we decline defendant's invitation to reduce his sentence in the interest of justice (see People v Bombard, 187 AD3d 1417, 1420 [2020]; People v Sostre, 172 AD3d at 1628). Defendant's remaining argument that his constitutional rights to confront witnesses and due process were violated when a witness gave testimony without an interpreter present is unpreserved because "defendant did not object to the lack of an interpreter at trial" (People v Avery, 80 AD3d 982, 984 [2011], lv denied 17 NY3d 791 [2011]).
Garry, P.J., Lynch, Clark and Colangelo, JJ., concur.
ORDERED that the judgment is modified, on the facts, by reducing defendant's conviction for assault in the second degree under count 6 of the indictment to assault in the third degree; vacate the sentence imposed thereon and matter remitted to the Supreme Court for resentencing on said count; and, as so modified, affirmed.



Footnotes

Footnote 1: A detective testified that he viewed security footage from Chubby's that captured the incident and he recognized defendant, who was holding a gun, from a prior encounter.

Footnote 2: Although the People provided the intake and discharge paperwork from the victim's initial visit to the hospital, the records contain no information regarding long-term effects of the injury, the severity of the injury or the amount of time anticipated for recovery.

Footnote 3: Although preserved, we are unpersuaded by defendant's contention that the People's request to exclude defendant's significant other from the courtroom during the trial constituted misconduct. The significant other was added to the People's witness list, albeit belatedly, was put under subpoena and there is support in the record for Supreme Court's determination that she was a material witness. Despite the fact that she was not ultimately called as a witness, the record does not support that this was malicious on the People's part.

Footnote 4: Defendant notes that an objection was made as to the verdict sheet, however, the basis of this objection was not that it improperly shifted the burden of proof.

Footnote 5: As noted above, defendant's conviction for assault in the second degree is being reduced, the sentence imposed thereon vacated and the matter remitted for resentencing on the reduced conviction.