People v Rackover (2025 NY Slip Op 03389)

People v Rackover

2025 NY Slip Op 03389

Decided on June 05, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 05, 2025

Before: Renwick, P.J., Kapnick, Mendez, Pitt-Burke, Michael, JJ. 

Ind No. 1616/17|Appeal No. 4539-4540|Case No. 2019-1916 2023-01757|

[*1]The People of the State of New York, Respondent,
v
James Rackover, Defendant-Appellant. 

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Marika Meis of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Sylvia Wertheimer of counsel), for respondent.

Judgment, Supreme Court, New York County (James M. Burke, J.), rendered December 5, 2018, convicting defendant, after a jury trial, of murder in the second degree, hindering prosecution in the first degree, and concealment of a human corpse (two counts), and sentencing him, to an aggregate sentence of 28 years to life; and order, same court and Justice, entered on or about December 16, 2022, which denied his CPL 440.10 motion to vacate judgment, unanimously affirmed.
The verdict convicting defendant of second-degree murder was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; see also People v Baque, 43 NY3d 26 [2024]). While the evidence was entirely circumstantial, the only reasonable conclusion to be drawn from the totality of the evidence was that defendant, acting in concert with codefendant, stabbed and killed the victim. Defendant's admissions to his friend that he stabbed and tried to dismember the victim's body, and of his actions to conceal the body after the victim's death, along with the surveillance footage, the forensic evidence, and evidence evincing defendant's consciousness of guilt, abundantly established defendant's guilt.
Defendant did not preserve his claim that the admission of the non-self-inculpatory portions of his nontestifying codefendant's statement, which implicated defendant in the murder, under the rule of completeness, would have violated defendant's Confrontation Clause rights (see People v Kello, 96 NY2d 740, 743-744 [2001]), and we decline to review it in the interest of justice.
The court providently ruled that if the self-incriminatory part of codefendant's statements were admitted, the part that inculpated defendant must also be admitted under the rule of completeness. The common-law rule of completeness provides that a party is "entitled to have the entirety of an admission, statement or recorded conversation, including both inculpatory and exculpatory portions, admitted into evidence, in order to prevent the distortion that may result from admitting part of a statement out of context" (People v Horton, 181 AD3d 986, 993 [3d Dept 2020], lv denied 35 NY3d 1045 [2020]; see Beech Aircraft Corp. v Rainey, 488 US 153, 171-172 [1988]; People v Dlugash, 41 NY2d 725, 736 [1977]). Introducing only codefendant's admission that he had assaulted the victim would unfairly mislead the jury as to the import of the statements in its entirety, where codefendant continued by describing defendant's assault and then stabbing of the victim. Thus, the court correctly invoked the rule of completeness and its concern with fairness to prevent any such distortion or misrepresentation of the meaning of the statements.
Where a defendant seeks to pursue a defense of third-party culpability, evidence offered in support of that defense is subject to "the general balancing analysis that governs the admissibility of all evidence" (People v DiPippo, 27 NY3d 127, 135 [2016]; People v Primo, 96 [*2]NY2d 351, 356 [2001]). Here, the court providently allowed defendant to admit some, but not all of the reverse Molineux (168 NY 264 [1901]) evidence in support of his third-party culpability defense that codefendant alone killed the victim. By permitting evidence that codefendant had multiple prior convictions for disorderly conduct from fights in bars, and that he had a photo of knives on his phone, the court's balanced ruling allowed defendant to show codefendant's "propensity to violence." The additional evidence precluded by the court, such as photos on codefendant's phone of boxing and additional knives and that he had "poked" someone in the eye with a knife, would have introduced unconnected matters with little probative value and presented risks of prejudice and jury confusion.
The court providently ruled that the People could elicit that defendant and his friend to whom he had confessed the murder, had run a gambling operation together. That limited Molineux evidence was admissible to refute the impression that defendant's friend had taken unfair advantage of defendant to launch the gambling operation, and to explain why they were engaged in that criminal activity together (see People v Rojas, 97 NY2d 32, 38 [2001]). That they engaged in that criminal activity together also illustrated the nature of their relationship, which led defendant to confess his crimes to his friend. Testimony about defendant's interest in boxing and mixed martial arts was not introduced as Molineux evidence, as it did not constitute evidence of prior crimes or bad acts.
The court providently admitted as evidence of defendant's consciousness of guilt, his lies to police and others inquiring into the victim's disappearance, his deletion of messages from his phone and iCloud, and his calls from prison, several months before trial, to the friend to whom he had confessed (see People v Leyra, 1 NY2d 199, 208 [1956]; People v Bierenbaum, 301 AD2d 119, 138-139 [2002], lv denied 99 NY2d 626 [2003], cert denied 540 US 821 [2003]). "Even equivocal consciousness of guilt evidence may be admissible so long as it is relevant," in that it tends to establish that the defendant "was aware of [his] guilt" (People v Bennett, 79 NY2d 464, 470 [1992]).
As the People concede, the court should have conducted a Frye hearing on the forensic statistic tool used to perform DNA analysis on seven samples (see People v Williams, 35 NY3d 24 [2020]). However, we find that the error was harmless (see id. at 42-43; People v Crimmins, 36 NY2d 230 [1975]). The FST evidence was a very small portion of the DNA evidence submitted, where over 100 samples were tested, and pertained to evidence that was of minimal importance when compared to the other DNA evidence.
The court providently denied defendant's CPL 440.10 motion without a hearing. The record supports the conclusion that defendant's attorneys exercised their professional judgment in declining to seek a charge on the lesser-included offense [*3]of first-degree manslaughter. Although counsel considered defendant's input, he also based his decision on his view of the evidence, and because the lesser charge would not be consistent with his trial strategy. Thus, counsel did not improperly delegate the decision to defendant, and thereby deprive him of his right to counsel (see People v Colville, 20 NY3d 20, 32 [2012]). Nor did counsel render ineffective assistance under state or federal constitutional standards (see People v Benevento, 91 NY2d 708, 713-714 [1998]; Strickland v Washington, 466 US 668 [1984]), for failing to raise a meritless challenge to the hindering prosecution count (see People v Caban, 5 NY3d 143, 152 [2005]), as that count accused him of hindering his codefendant's prosecution.
We perceive no basis for reducing the sentence. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 5, 2025